[No. D045073. Fourth Dist., Div. One. June 28, 2005.]

In re A. C., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
JORGE C. et al., Defendants and Appellants.

856

COUNSEL

Michael D. Randall, under appointment by the Court of Appeal, for Defendant and Appellant Jorge C.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Perla A.

John J. Sansone, County Counsel, Susan Strom and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

Mary Elizabeth Handy, under appointment by the Court of Appeal, for Minor.

**OPINION**

**McDONALD, J.**—Perla A. (Mother) and Jorge C. (Father), parents of A. C. (A.) and residents of Tijuana, Mexico, appeal the juvenile court's postdispositional order granting de facto parent status to Jon and Christine D. (the D.'s), the foster parents of A., a juvenile court dependent. Mother contends California does not have subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.) (the Act).[1] She also contends the court erred by denying her request for a continuance, the dependency petition does not state a cause of action, and the jurisdictional findings and orders are unsupported by substantial evidence. Father contends he was not properly served under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638). Both parents contend the court abused its discretion by granting the D.'s' de facto parent application and each parent joins in the other's arguments. We conclude California does not have subject matter jurisdiction of this dependency proceeding and reverse with directions to the juvenile court to dismiss the dependency petition.

I

BACKGROUND

In July 2002 Mother, two-year-old A., and A.'s younger sibling were in a car accident in Tijuana. A. sustained spinal cord injuries and severe respiratory complications. The record does not disclose whether her sibling was injured. Mother was seriously injured in the accident. She was confined to a wheelchair and needed a series of reconstructive surgeries to increase her mobility. She was treated in Mexico. Father was the family's sole means of support and not in a position to provide the 24-hour care she needed.

A. was hospitalized in Tijuana and on August 8, 2002, transferred to the Shriners' Hospital in Sacramento, California. On October 25 she returned home to Tijuana but developed complications. She was rehospitalized in Tijuana and on March 18, 2003, at her family's request, returned to the Shriners' Hospital. On July 9 she returned to Mexico, but her condition deteriorated. On July 10 she was admitted to the intensive care unit at the Shriners' Hospital, where she remained until July 29. After her stay in the intensive care unit, she remained in the hospital.

---

[1] All statutory references are to the Family Code unless otherwise specified.

On August 4, 2003, the Sacramento County child welfare agency (the Sacramento Agency) filed a dependency petition for A. pursuant to Welfare and Institutions Code section 300, subdivision (g).[2] On August 7 this petition was dismissed as premature because no date had been set for A.'s discharge from the hospital. On September 5, the day she was due to be discharged, the Sacramento Agency took her into protective custody and detained her with the D.'s, licensed foster parents who lived in Ramona, San Diego County and had experience caring for medically fragile children.[3] On September 9 the Sacramento Agency filed a Welfare and Institutions Code section 300, subdivision (g) petition, alleging A.'s injuries were life-threatening without monitoring by pediatric specialists and machinery unavailable in Tijuana and, possibly, Mexico. On December 12 the petition was dismissed because of insufficient evidence that Mother and Father were neglectful or abusive. The same day, the San Diego County Health and Human Services Agency (Agency) received a referral informing it of the dismissal.

On December 23, 2003, a Spanish-speaking Agency social worker interviewed Mother and Father, who agreed to Agency's taking jurisdiction over A. On December 26 Agency detained A. in the D.'s' foster home.[4] On December 31, when A. was three and one-half years old, Agency filed a dependency petition alleging Mother and Father were out of the country and unable to arrange appropriate and adequate care for A. (Welf. & Inst. Code, § 300, subd. (g).) The juvenile court detained A. in foster care and transferred the matter from its Northern Division to its South Bay Division, closer to Mother and Father's home in Tijuana.

The jurisdictional and dispositional hearing was held on February 20, 2004. Father was not present. Mother said he was home caring for their two-year-

---

[2] Welfare and Institutions Code section 300, subdivision (g) provides for a dependency when a child "has been left without any provision for support; physical custody of the child has been voluntarily surrendered pursuant to Section 1255.7 of the Health and Safety Code and the child has not been reclaimed within the 14-day period specified in subdivision (e) of that section; the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child; or a relative or other adult custodian with whom the child resides or has been left is unwilling or unable to provide care or support for the child, the whereabouts of the parent are unknown, and reasonable efforts to locate the parent have been unsuccessful." Health and Safety Code section 1255.7 concerns the "safe-surrender" of infants 72 hours old or younger by their parents and temporary custody of the newborn by county child welfare services agencies.

[3] While in the D.'s' care, A. was hospitalized in the intensive care unit in San Diego Children's Hospital at least once.

[4] It is unclear where A. was between December 12 (when the second Sacramento County dependency petition was dismissed) and December 26.

old daughter, who was ill. Agency dismissed the Welfare and Institutions Code section 300, subdivision (g) allegation and added a Welfare and Institutions Code section 300, subdivision (b)[5] allegation that Mother and Father were unable to provide the intensive medical treatment required for A.'s cerebral palsy, spinal cord injury, and respiratory compensation. Mother submitted on the petition on the basis of Agency's reports. The court entered a true finding on the amended petition, declared A. a dependent, removed her from her parents' custody, and placed her in foster care. Agency detained A. with the D.'s.

On May 25, 2004, the court received the D.'s' de facto parent application. On August 5 it granted the application. Father filed his notice of appeal on September 14 and Mother filed hers on September 30.

II

THE ACT

A. *Introduction*

■ Effective January 1, 2000, the Act replaced the Uniform Child Custody Jurisdiction Act (the UCCJA). The UCCJA's purposes were "to

---

[5] Welfare and Institutions Code section 300, subdivision (b) provides for a dependency when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. No child shall be found to be a person described by this subdivision solely due to the lack of an emergency shelter for the family. Whenever it is alleged that a child comes within the jurisdiction of the court on the basis of the parent's or guardian's willful failure to provide adequate medical treatment or specific decision to provide spiritual treatment through prayer, the court shall give deference to the parent's or guardian's medical treatment, nontreatment, or spiritual treatment through prayer alone in accordance with the tenets and practices of a recognized church or religious denomination, by an accredited practitioner thereof, and shall not assume jurisdiction unless necessary to protect the child from suffering serious physical harm or illness. In making its determination, the court shall consider (1) the nature of the treatment proposed by the parent or guardian, (2) the risks to the child posed by the course of treatment or nontreatment proposed by the parent or guardian, (3) the risk, if any, of the course of treatment being proposed by the petitioning agency, and (4) the likely success of the courses of treatment or nontreatment proposed by the parent or guardian and agency. The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

'[avoid] jurisdictional competition and conflict, [promote] interstate coopera-
tion, [litigate] custody where child and family have closest connections,
[discourage] continuing conflict over custody, [deter] abductions and unilat-
eral removals of children, [avoid] relitigation of another state's custody
decisions, and [promote] exchange of information and other mutual assistance
between courts of sister states.' [Citation.]" (*In re C.T.* (2002) 100 Cal.App.4th
101, 106 [121 Cal.Rptr.2d 897].) The UCCJA's policy was "to limit, rather
than proliferate, jurisdiction." (*In re Marriage of Newsome* (1998) 68
Cal.App.4th 949, 957 [80 Cal.Rptr.2d 555]; accord, *In re Stephanie M.* (1994)
7 Cal.4th 295, 313 [27 Cal.Rptr.2d 595, 867 P.2d 706].) It "provide[d] the
exclusive method of determining subject matter jurisdiction in custody cases
in California" and applied to juvenile dependency proceedings and interna-
tional custody disputes. (*Stephanie M.,* at p. 310.)

The Act "is the exclusive method of determining the proper forum in
custody disputes involving other jurisdictions and governs juvenile depen-
dency proceedings." (*In re C.T., supra,* 100 Cal.App.4th at p. 106; see
§§ 3402, subd. (c), 3421, subd. (b).) It applies to international custody
disputes (see *In re Stephanie M., supra,* 7 Cal.4th at p. 310); foreign countries
are treated as states for the purpose of determining jurisdiction (§ 3405,
subd. (a)). Cases interpreting the UCCJA may be instructive in deciding cases
under the Act, except where the two statutory schemes vary. (E.g., *In re C.T.,
supra,* 100 Cal.App.4th at pp. 109, fn. 4, 111, fn. 9.)

■ We are not bound by the juvenile court's findings regarding subject
matter jurisdiction, but rather "independently reweigh the jurisdictional
facts." (*In re Adoption of Zachariah K.* (1992) 6 Cal.App.4th 1025, 1034 [8
Cal.Rptr.2d 423].) "[S]ubject matter jurisdiction either exists or does not exist
at the time the action is commenced" (*Plas v. Superior Court* (1984) 155
Cal.App.3d 1008, 1015, fn. 5 [202 Cal.Rptr. 490], cited in *Zachariah K.,* at
p. 1035) and cannot be conferred by stipulation, consent, waiver, or estoppel
(*Plas,* at pp. 1013–1014; *In re Marriage of Ben-Yehoshua* (1979) 91
Cal.App.3d 259, 263 [154 Cal.Rptr. 80]).

The Act sets forth the prerequisites of jurisdiction relevant to this case in
sections 3421 and 3424.

B. *Section 3421: Home State Jurisdiction*

Section 3421, subdivision (a) confers jurisdiction on the juvenile court
"only if any of the following are true:

"(1) This state is the home state of the child on the date of the commence-
ment of the proceeding, or was the home state of the child within six months

before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

"(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.

"(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

1. *Section 3421, Subdivision (a)(1)*

Section 3402 provides the definitions necessary to a discussion of section 3421, subdivision (a)(1). " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).) " 'Person acting as a parent' means a person, other than a parent, who: (1) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and (2) has been awarded legal custody by a court or claims a right to legal custody under the law of this state." (§ 3402, subd. (m).) " 'Physical custody' means the physical care and supervision of a child." (§ 3402, subd. (n).)

Because neither Mother nor Father lived in California and because A. was in California when these proceedings were commenced on December 31, 2003, the only possibility for California subject matter jurisdiction under section 3421, subdivision (a)(1) is that California was A.'s home state on December 31. Integrating the definitions in section 3402 into the language of

section 3421, subdivision (a)(1), California was her home state on that date if, since July 1, she had lived in California with a person who cared for and supervised her, and who had been awarded legal custody by a court or who claimed legal custody. Aside from the hospital, the only place in California A. stayed was in the D.'s' home. However, she was not moved to the D.'s' home until September 5.[6] Before the Sacramento Agency moved her from the Shriners' Hospital to the D.'s' home on that date, Mexico was her home state, and she was temporarily absent from Mexico solely for hospitalization and medical treatment.[7] We therefore conclude that section 3421, subdivision (a)(1) did not confer jurisdiction on the juvenile court.

2. *Section 3421, Subdivision (a)(2), (3), and (4)*

For California to have subject matter jurisdiction under section 3421, subdivision (a)(2), (3), or (4), Mexico must lack jurisdiction.[8] Mexico has jurisdiction if (1) it was A.'s home state on December 31, 2003, or (2) it was her home state within the period July 1 to December 31 and she was absent from Mexico and her parents continued to live there. (§ 3421, subd. (a)(1).) Mexico was A.'s home state both on December 31 and within the period July 1 to December 31 if she lived there with her parents from July 1 to December 31, aside from temporary absences. (§ 3402, subd. (g).) Therefore, we must determine if she lived in Mexico with her parents from July 1 to December 31, aside from temporary absences.

As noted above, Mexico was A.'s home state before September 5, 2003. On September 5, the Sacramento Agency apparently took A. into custody after her release from the Shriners' Hospital and moved her to the D.'s' home. On September 9, it filed a dependency petition, which was dismissed on December 12. This dismissed petition did not change the fact that A. was still in California solely for medical care. Thus, Mexico remained her home state from September 5 until December 12. As noted above, it is unclear where A. was from December 12 until December 26, when Agency detained her in the D.'s' home. This detention by Agency did not change her home state status, which remained Mexico when the petition was filed on December 31. Mexico therefore had subject matter jurisdiction, and California did not have subject matter jurisdiction under section 3421, subdivision (a)(2), (3), and (4).

---

[6] Between July 1 and December 31, 2003, A. was in the Shriners' Hospital in Sacramento for about 10 days, in Mexico for about a day, back in the Shriners' Hospital for nearly two months, then, apparently, in the D.'s' home in Ramona for nearly four months, although it is unclear where she was for two weeks in December.

[7] We need not decide whether A. was living in California between September 5 and December 31 (§ 3402, subd. (g)) or whether the D.'s qualified as " '[p]erson[s] acting as . . . parent[s]' " (§ 3402, subd. (m)).

[8] There is no information in the record that Mexico declined to exercise jurisdiction.

### C.  *Section 3424: Temporary Emergency Jurisdiction*

### 1.  *Section 3424, Subdivision (a)*

Section 3424, subdivision (a) states: "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse."

██  "One of the reasons the UCCJA was revised and the Act enacted was to clarify when a court could take emergency jurisdiction over a child. The Act made clear that emergency jurisdiction could be exercised to protect a child only on a temporary basis until the court with appropriate jurisdiction issued a permanent order. [Citation.]" (*In re C.T., supra,* 100 Cal.App.4th at p. 112.) An "order assuming emergency jurisdiction under the Act has time limitations. It must specify 'a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction.' (§ 3424, subd. (c).) It 'remains in effect until an order is obtained from the other state within the period specified or the period expires.' (*Ibid.*)" (*In re C.T., supra,* 100 Cal.App.4th at p. 108.)[9]

---

[9] Section 3424, subdivisions (b), (c), and (d) concern the duration of custody determinations made under section 3424. Section 3424, subdivision (d) additionally concerns communications between the California court and the court of the other state. We need not discuss these subdivisions, which provide:

"(b) If there is no previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 3421 to 3423, inclusive. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

"(c) If there is a previous child custody determination that is entitled to be enforced under this part, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 3421 to 3423, inclusive. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(d) A court of this state that has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 3421 to 3423, inclusive, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect

Emergencies under the Act generally involve sexual or physical abuse. (*In re C.T., supra,* 100 Cal.App.4th at p. 109; *In re Stephanie M., supra,* 7 Cal.4th at pp. 303, 310–311; *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1174 [108 Cal.Rptr.2d 493].) "Unsubstantiated allegations are insufficient to invoke emergency jurisdiction." (*In re C.T., supra,* 100 Cal.App.4th at p. 107.) The finding of an emergency is to be made only after an evidentiary hearing, although the juvenile court can detain the child before that hearing. (*Id.* at pp. 107, 108, fn. 3.) The jurisdictional hearing does not qualify as the hearing authorized by the Act. (*Id.* at pp. 108–109.)

The requirements of section 3424, subdivision (a) were not satisfied in this case. The jurisdictional finding—Mother and Father were unable to provide the intensive medical treatment required for A.'s cerebral palsy, spinal cord injury, and respiratory compensation, resulting in a substantial risk A. would suffer serious physical harm or illness—does not "necessarily [include] a finding under the Act that an emergency existed and it was necessary to protect [A.] from actual or threatened mistreatment or abuse." (*In re C.T., supra,* 100 Cal.App.4th at p. 109, fn. omitted.) The jurisdictional finding does not include a finding of abandonment. Although A. was present in California when Agency filed the dependency petition on December 31, 2003, Mother and Father never abandoned her. " 'Abandoned' means left without provision for reasonable and necessary care or supervision." (§ 3402, subd. (a).) Far from abandoning A., or subjecting her to or threatening her with mistreatment or abuse, Mother and Father attempted to provide for the medical care she needed by sending her to the Shriners' Hospital and then by acquiescing in the commencement of this dependency proceeding. This acquiescence was understandable considering A.'s grave condition, Mother's own debilitating injuries, and Father's position as the sole support for the family, which included A.'s younger sibling.

## 2. *Section 3424, Subdivision (e)*

Section 3424, subdivision (e) states: "It is the intent of the Legislature in enacting subdivision (a) that the grounds on which a court may exercise temporary emergency jurisdiction be expanded. It is further the intent of the Legislature that these grounds include those that existed under Section 3403 of the Family Code as that section read on December 31, 1999, particularly including cases involving domestic violence." On December 31, 1999,

the safety of the parties and the child, and determine a period for the duration of the temporary order." (§ 3424, subds. (b), (c), (d).)

section 3403, subdivision (a) contained the following four alternate grounds for child custody jurisdiction.

### a. *Former Section 3403, Subdivision (a)(1)*

This subdivision stated: "This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before [the] commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody of the child or for other reasons, and a parent or person acting as parent continues to live in this state." (Former § 3403, subd. (a)(1).) The child's physical presence was not a prerequisite for jurisdiction under former section 3403, subdivision (a)(1) (former § 3403, subd. (c)), and the physical presence of the child, or the child and one contestant, was not sufficient to confer jurisdiction (former § 3403, subd. (b)).

Former section 3403, subdivision (a)(1) corresponds basically to section 3421, subdivision (a)(1). In the instant case, it would not provide a ground for jurisdiction unavailable under the current statutory scheme.

### b. *Former Section 3403, Subdivision (a)(2)*

This subdivision read: "It is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (Former § 3403, subd. (a)(2).) The above provisions in former section 3403, subdivisions (b) and (c) regarding physical presence applied.

Former section 3403, subdivision (a)(2) corresponds basically to section 3421, subdivision (a)(2), but it did not require another state to lack or decline jurisdiction. Mother and Father do not have "a significant connection with [California]," as required by former section 3403, subdivision (a)(2)(A)), and there is no "contestant" meeting this requirement. Former section 3402, subdivision (a) defined contestant as "a person, including a parent, who claims a right to custody or visitation rights with respect to a child." At the time the dependency petition was filed, neither the D.'s nor Agency could claim a right to custody or visitation apart from the dependency proceeding itself. Thus, former section 3403, subdivision (a)(2) would not provide a basis for jurisdiction in the instant case.

### c. *Former Section 3403, Subdivision (a)(3)*

This subdivision stated: "The child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to

protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent. For purposes of this subdivision, 'subjected to or threatened with mistreatment or abuse' includes a child who has a parent who is a victim of domestic violence, as defined in Section 6211." (Former § 3403, subd. (a)(3).)

As applied to the instant case, former section 3403, subdivision (a)(3) corresponds to section 3424, subdivision (a), but allowed emergency protection for a child "neglected or dependent" other than by abandonment, mistreatment, and abuse. Here, there was no neglect by Mother and Father and A. was not "otherwise . . . dependent" or in need of "protection." Her only need was medical care, and there was no showing this care was unavailable outside the dependency system.

### d. *Former Section 3403, Subdivision (a)(4)*

This subdivision provided: "Both of the following conditions are satisfied: [¶] (A) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2), or (3) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child. [¶] (B) It is in the best interest of the child that this court assume jurisdiction." (Former § 3403, subd. (a)(4).)

Former section 3403, subdivision (a)(4) corresponds to section 3421, subdivision (a)(3) and (4), with the addition of the express provision that California's assumption of jurisdiction be in the child's best interest. Former section 3403, subdivision (a)(4) also required, in essence, that no other state had jurisdiction under former section 3403, subdivision (a)(1), (2), or (3) and that any court with jurisdiction declined to exercise it. Because Mexico had jurisdiction under former section 3403, subdivision (a)(2) and did not decline to exercise it, former section 3403, subdivision (a)(1) would not confer jurisdiction on California.

### III

### AGENCY'S MOTION TO AUGMENT THE RECORD AND MOTHER'S REQUESTS FOR JUDICIAL NOTICE

### A. *Introduction*

On March 9, 2005, at Agency's request, the juvenile court held a special hearing to address the issue of subject matter jurisdiction. The court con-

cluded it "had subject matter jurisdiction at the time of the true finding made on 2/20/04, and continued to have subject matter jurisdiction since that date." Mother and Father have appealed the March 9, 2005 order (case No. D046051). Agency's motion to augment the record and Mother's requests for judicial notice all concern the March 9, 2005 hearing.

### B. *Agency's Motion to Augment*

Agency asks that the record be augmented with the March 9, 2005 juvenile court minute order (exhibit 1); Agency's addendum report prepared for the March 9 hearing (exhibit 2); a February 7 letter to Agency's counsel from the Mexican consulate (exhibit 3); a February 28 letter, in Spanish, to Agency's counsel from the director of a Tijuana social services agency (the Tijuana Agency); and an English translation of that letter (exhibit 4). The addendum report sets forth an Agency social worker's February 25, 2005 conversation with the Tijuana Agency's director, memorialized in the February 28 letter. Those materials state the director learned of this case only recently, but in retrospect, the Tijuana Agency would have deferred to the juvenile court's jurisdiction and would still do so, as Tijuana lacks the medical and other resources A. needs. The letter from the Mexican consulate states that in August 2003, it asked Tijuana health authorities whether there was a facility that could provide the treatment A. needed; the authorities told the consulate to contact the Infantile Hospital of the Californias I.B.P.; that hospital responded there was no specialized pediatric hospital in Tijuana that could treat A. and recommended she remain in the hospital where she was being treated; and the consulate agreed.

Agency claims these documents render moot Mother's subject matter jurisdiction argument because they show the juvenile court notified the Mexican consulate and the Tijuana social services agency of the juvenile court proceedings. Mother and Father oppose Agency's motion, arguing these postjudgment matters are irrelevant to this appeal, subject matter jurisdiction cannot be conferred by consent, and the Mexican entities are not courts and have no standing.

### C. *Mother's Requests for Judicial Notice*

In her first request, Mother seeks judicial notice of portions of the reporter's transcript of the March 9, 2005 hearing. She asserts those portions of the transcript show Agency's counsel conceded that A.'s home state is Mexico, and this concession is binding. Agency, joined by A.'s appellate counsel, argues this request for judicial notice should be denied unless Mother's counsel provides the entire reporter's transcript. In her reply,

Mother notes the entire transcript is in the appellate record of case No. D046051, and in her unopposed second request for judicial notice, she seeks judicial notice of the record in that case, including the reporter's transcript of the March 9, 2005 hearing.

### D. *Discussion*

The subjects of these motions—the record in case No. D046051; the February 7, 2005 letter to Agency's counsel from the Mexican consulate; and the February 28 letter to Agency's counsel from the director of the Tijuana Agency—are all postjudgment matters irrelevant to the issue of subject matter jurisdiction. Moreover, none shows the juvenile court had subject matter jurisdiction, Mexico lacked jurisdiction, a Mexican court declined to exercise jurisdiction, or there was no medical care available for A. outside Tijuana but still in Mexico. We therefore deny Agency's motion to augment the record and Mother's requests for judicial notice.

## IV

## CONCLUSION

Welfare and Institutions Code section 300, subdivision (b) authorizes a dependency when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the willful or negligent failure of the parent . . . to provide the child with adequate . . . medical treatment . . . ." Mother and Father, however, did not withhold medical treatment or neglect A. in any way. Indeed, at the time the petition was filed, she was receiving the medical care she needed. Here, Agency and the juvenile court invoked Welfare and Institutions Code section 300, subdivision (b) in an attempt to shift the responsibility for the medical care of A., a foreign national, from her parents, also foreign nationals, and from their home state, Mexico, to San Diego County and its taxpayers. Although we commend any charitable organization that assumes the financial burden of providing medical care to a child, as the Shriners did in this case, the juvenile dependency law cannot be so used. A child who is a foreign national cannot be made the subject of the California juvenile dependency law simply because California offers better medical care than the child's home state.

We therefore reverse the detention, jurisdictional, and dispositional findings and orders and all subsequent orders, and remand the matter to the juvenile court with directions to dismiss the dependency petition. In view of our conclusion, we need not address the remaining contentions.

## DISPOSITION

The detention, jurisdictional, and dispositional findings and orders and all subsequent orders are reversed. The matter is remanded to the juvenile court with directions to dismiss the dependency petition.

Huffman, Acting P. J., and Nares, J., concurred.