Filed 3/19/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CRISTIAN I., a Person Coming Under the Juvenile Court Law. | B248035 |
| | (Los Angeles County Super. Ct. No. CK95577) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ANGELA H., | |
| Defendant and Appellant. | |

Appeal from orders of the Superior Court of Los Angeles County, Donna Levin, Juvenile Court Referee.  Affirmed.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant, Angela H..

Darlene Azevedo Kelly, under appointment by the Court of Appeal for Defendant and Appellant, Zachary H.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Describing the matter as "shocking to me, even after all of these years," and "one of the worse cases I have seen, where there's such sadism . . . and such disregard for a child's feelings," the experienced dependency bench officer in this proceeding sustained allegations under Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm inflicted nonaccidentally) (two counts), (b) (failure or inability to protect) (five counts), (i) (cruelty) (two counts) and (j) abuse of sibling (three counts); declared then-six-year-old Cristian I.[1] and his eight-month-old sister Alice H. dependents of the juvenile court; removed the children from the care and custody of their mother, Angela H., and from Zachary H., Cristian's stepfather and Alice's father (Angela's current husband); placed Cristian in Arizona with his presumed father, Mark I.; and ordered an expedited evaluation by the Los Angeles County Department of Children and Family Services (Department) of possible placement of Alice with her maternal grandmother or great-grandmother. Reunification services for both Angela and Zachary were denied.

Without in any way challenging the overwhelming evidence of extreme physical abuse inflicted on Cristian by Zachary or attempting to defend her passive role in allowing Zachary to torture her son, Angela appeals from the jurisdiction findings and disposition order, emphasizing Cristian had been the subject of a family law custody order in Arizona and arguing, even though she was the custodial parent and living with Zachary and Cristian in California, the juvenile court's findings and order are void because the court failed to fully comply with the procedural requirements of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.)[2] after it had initially exercised temporary emergency jurisdiction to protect Cristian. We affirm.

---

[1] The child's name is spelled Christian, rather than Cristian, at various points in the record. For consistency we spell it Cristian throughout this opinion.

[2] Statutory references are to the Family Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Arizona Custody Order, Angela's Move to California and Mark's Efforts To Enforce His Parenting/Visitation Rights*

Cristian was born in June 2006 in Tucson, Arizona. "Due to father [Mark] re-entering our child's life," in September 2009 Angela and Mark, who had never married, signed a memorandum of understanding/child care plan following a successful mediation through the Family Center of the Conciliation Court, Arizona Superior Court in Pima County. A September 28, 2009 Arizona state court family law order granted Angela sole legal custody and primary physical custody of Cristian. Mark was granted visitation/ "parenting time" over various weekend periods and holidays.

Angela and Zachary married on September 30, 2011 after dating for approximately three years. According to Angela, she, Zachary and Cristian moved to California sometime in 2011 while she was pregnant with Alice (who was born in May 2012). Angela subsequently told one of the Department's social workers she left Arizona after Cristian told her and Zachary that Mark and Mark's father had sexually molested him.

Records submitted by the Department, however, reflect that Cristian had attended school in Tucson through Friday, March 16, 2012, immediately before the school's one-week Spring break. Mark reported he had gone to the school the following Friday, March 23, 2012, to pick up Cristian for the weekend, unaware the school was closed. (Mark stated Angela had confirmed he would be picking up Cristian on that Friday in his last conversation with her.) On March 24, 2012 Angela sent Mark a text message informing him she was traveling to California with Cristian. Mark, who had previously contacted the Tucson Police Department to report Angela's interference with his visitation rights, filed a missing person report on April 10, 2012 with the Tucson police.

Following Cristian's disappearance Mark initiated post-judgment proceedings in the Arizona family law case seeking full custody of his son. Angela was served by publication. On September 11, 2012 the court found Angela had taken Cristian out of the state without notice to Mark in violation of Arizona law and ordered Angela to return

3

Cristian to Arizona to permit Mark to exercise his parenting time with the child.  A further hearing was set for November 19, 2012.  The court directed Mark to personally serve Angela, whose address in California he now had, with notice of the hearing.

2. *The Emergency Call Following Zachary's Extreme Physical Abuse of Cristian*

On September 15, 2012 Angela called the police emergency operator to report child abuse in progress.  Responding officers were met at the door by Zachary, whom they detained, and found Cristian standing naked in the bathtub with cuts and bruises all over his face and body, including severe bruises on his genitals.  Cristian told officers Zachary had tried to cut his penis off with scissors.

Both Cristian and Alice were immediately detained.  Cristian was taken to the pediatric intensive care unit at Northridge Hospital; Alice was placed in shelter care.  At the hospital, where his injuries were extensively documented, Cristian explained Zachary had burned him "with a stick that had fire at the end" and cut his face using a drill gun.  Cristian also reported Zachary had kept him locked in a closet for four months, only letting him out to use the bathroom, and made him smoke marijuana.

Zachary was arrested.  While Los Angeles Police Officer Barrios was obtaining Zachary's personal information, Zachary volunteered, "The boy is my step-son.  His mom and I have him here together.  We moved from Arizona where his father and grandfather were molesting him.  Now I find out he is doing the same thing to my 4-month-old daughter. . . .  There was blood in my daughter's vagina and he was touching my wife while she slept.  I lost it and hit him."  When Alice was subsequently examined, there were no signs of sexual abuse.

Los Angeles Police Officers Simmons and Palmer interviewed Angela at a parking lot shortly after she called the emergency operator.  Holding Alice and crying hysterically, Angela said she and Zachary had left Tucson because Mark was sexually abusing Cristian.  After Angela and Zachary got married about a year ago, Zachary became physically abusive, including beating her with his fists and choking her until she almost passed out.  (Angela had bruises consistent with physical abuse.)  Zachary also physically abused Cristian, who was continually covered from head to toe in old and new

4

bruises, and the abuse was becoming increasingly more violent. Angela corroborated Cristian's assertions he had been forced to live in a closet and smoke marijuana.[3] She did not send Cristian to school because she was afraid Mark would be able to track him down and get visitation. She did not report the abuse, much of which she had witnessed, because she did not want Zachary to get caught growing marijuana. Angela also told officers she had been diagnosed with schizophrenia, chronic depression and manic depression.[4]

      3. *The Dependency Petition and Detention Hearing*

      On September 19, 2012 the Department initiated dependency proceedings on behalf of Cristian and Alice pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (d) (sexual abuse) and (i) (cruelty). With respect to sexual abuse, the petition alleged Mark had sodomized Cristian. At a detention hearing the same day, Angela and Zachary submitted to the removal of the children without challenging the evidentiary presentation in the Department's detention report. Angela was granted monitored visitation with both children; but Zachary, who was then incarcerated on charges of child and spousal abuse, was granted monitored visitation with only Alice and ordered not to have any contact with Cristian. The Department was given discretion to release Cristian to Mark. The court set a further hearing for September 24, 2012 for an update on efforts to locate and interview Mark.

      In a last-minute-information-for-the-court report submitted in connection with the September 24, 2012 hearing, the Department summarized its interview with Mark and his wife.[5] Mark first found out Angela had married Zachary after Cristian told him Zachary

---

[3]     Cristian tested positive for marijuana.

[4]     Angela stopped taking the medication prescribed for her schizophrenia after she became pregnant with Cristian. She admitted she had smoked marijuana while pregnant with Alice to help with nausea.

[5]     The court was also provided with the extensive medical records from the hospital documenting Cristian's injuries and treatment.

5

had beaten him with a wooden spoon when he failed to eat his dinner. Angela and Cristian disappeared in March 2012 after Mark had started taking steps to go to court. After Mark became too distraught to talk, his wife explained she had discovered Cristian engaging in simulated sex with her three-year-old son. Cristian told her he had seen Angela and Zachary having sex and a magazine with naked people in it. Angela later called Mark, reporting that Zachary said Cristian told him he was being sexually abused by his father and paternal grandfather. Cristian, however, had never met his paternal grandfather, who lived in Mexico. The court appointed counsel to represent Mark and ordered monitored visitation for him in California.

4. *The Ceding of Jurisdiction by the Arizona Court*

In its report for the jurisdiction and disposition hearing, initially scheduled for October 30, 2012, the Department described the Arizona family law custody and visitation order and provided copies of the child care plan signed by Angela and Mark and the September 11, 2012 order directing Cristian's return to the state. In a supplemental report the Department summarized an assessment of Cristian by a multidisciplinary assessment team. Cristian said he wanted to live with Mark and had lied when he previously told the social worker Mark had sodomized him. The Department recommended Cristian be released to Mark with a home-of-parent order and family maintenance services.

At the October 30, 2012 hearing Mark's counsel questioned whether the juvenile court, having issued its initial detention order to protect Cristian from Zachary, continued to have jurisdiction under the UCCJEA in light of the custody case in Arizona. The court agreed to contact the Arizona court before the November 19, 2012 Arizona court date to determine if it would allow the case to proceed in California. Angela did not challenge the California court's jurisdiction at this hearing or at any other time while the matter was pending before the juvenile court.

The court ordered Cristian released to Mark on the condition Mark obtain therapy and other services for Cristian. Angela was ordered to have no contact with Cristian pending a report from his therapist. The case was continued to November 16, 2012 for a

6

progress report on the UCCJEA issue. The matter was again continued to December 26, 2012 because the juvenile court had not yet contacted the Arizona court.

At the November 19, 2012 hearing in Arizona superior court, Mark, appearing in person, was sworn and questioned by the court as was Artin Narssiyan, a dependency investigator for Los Angeles County, who appeared telephonically. A minute order filed November 21, 2012 stated, "The Court notes that the Juvenile Court in California has given custody of the minor child to [Mark], and the minor child is residing with him. There are criminal charges that have been brought forth against [Angela] and her current husband for child abuse against the minor child . . . . [¶] THE COURT FINDS that the Juvenile Court in California has jurisdiction in this matter and this case shall proceed in the State of California at this time . . . ."

At the December 26, 2012 progress hearing the juvenile court stated, "The Arizona Superior Court in Pima County has ceded jurisdiction to this court, and that court found that juvenile court in California has jurisdiction and the case shall proceed in the state of California." The court continued the matter to January 7, 2013 for the jurisdiction hearing.

5. *The Jurisdiction and Disposition Hearings*

At the conclusion of the jurisdiction hearing on January 7, 2013, the court dismissed the allegations Cristian had been abused by Mark, struck a reference to alcohol abuse by Angela and sustained the petition as amended. The court declared the children dependents of the court, ordered them removed from Angela and Zachary's custody, denied reunification services, and placed Cristian with Mark. The court retained jurisdiction over Cristian, notwithstanding he was doing well with Mark and Mark had obtained services for him, "because of the severity of the trauma."

Angela and Zachary filed timely notices of appeal from the court's January 7, 2013 order. Angela's appeal does not challenge the court's findings and order as to Alice. Zachary's appointed counsel filed a brief that raised no issues, and Zachary has submitted no additional letter identifying any contentions he wished to raised on appeal.

7

Accordingly, his appeal is dismissed as abandoned pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 and *In re Sade C.* (1996) 13 Cal.4th 952.[6]

## DISCUSSION

1. *Temporary Emergency Jurisdiction Under the UCCJEA*

The UCCJEA, adopted in California effective January 1, 2000 (see *In re C.T.* (2002) 100 Cal.App.4th 101, 106 (*C.T.*) and Arizona effective January 1, 2001 (see *Welch-Doden v. Roberts* (2002) 202 Ariz. 201, 208 [42 P.3d 1166]), governs dependency proceedings and is the exclusive method for determining the proper forum to decide custody issues involving a child who is subject to a sister state custody order. (§ 3421, subd. (b) ["[s]ubdivision (a) [of § 3421] is the exclusive jurisdictional basis for making a child custody determination by a court of this state"]; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 310;[7] *In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1348.) All parties here agree that Arizona is Cristian's "home state" within the meaning of the UCCJEA (see § 3402, subd. (g);[8] see generally *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 511 [parent's abduction of his child from the other parent cannot form the basis for establishing jurisdiction in the abductor's state of residence]) and that, at the outset of these proceedings, Arizona had exclusive, continuing jurisdiction to make all custody

---

[6] The juvenile court terminated its dependency jurisdiction as to Cristian on July 8, 2013. Although Angela has not appealed that order, because the disposition order continues to adversely affect her and her appeal challenges the juvenile court's authority to make any child custody determination other than an initial, temporary emergency order, the appeal is not moot. (See, e.g., *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716.)

[7] The Supreme Court in *In re Stephanie M., supra,* 7 Cal.4th at page 310 addressed the Uniform Child Custody Jurisdiction Act (UCCJA), which was replaced by the UCCJEA in 2000. (See *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1173.)

[8] Based on Cristian's school attendance records and Mark's report of Angela's March 24, 2012 text message that she was taking Cristian to California that weekend, the dependency petition was filed less than six months after Angela, Zachary and Cristian moved to California—the threshold requirement for home state status.

8

decisions regarding Cristian except as specified in section 3424's provisions for temporary emergency jurisdiction.

Section 3424 provides an exception to the exclusive jurisdictional bases for making an initial child custody determination or modifying a sister state custody order. (§§ 3421, subds. (a), (b), 3423.) A California court may exercise "temporary emergency jurisdiction" when a "child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).) An "emergency" exists when there is an immediate risk of danger to the child if he or she is returned to a parent. (*In re Jaheim B., supra*, 69 Cal.App.4th at p. 1349; *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1174-1175.) "Although emergency jurisdiction is generally intended to be short term and limited, the juvenile court may continue to exercise its authority as long as the reasons underlying the dependency exist." (*In re Jaheim B*., at pp. 1349-1350; see *In re Nada R*., at p. 1175.)

The finding of an emergency should only be made after an evidentiary hearing. (*C.T., supra*, 100 Cal.App.4th at p. 107) ["[u]nsubstantiated allegations are insufficient to invoke emergency jurisdiction"].) Nonetheless, the child may be detained prior to that hearing for his or her protection. (See *id.* at p. 108, fn. 3 ["'[w]hen a petition contains allegations of an emergency situation, it is proper for a court to issue an interim custody order to protect the child pending the hearing'"]; *In re A.C.* (2005) 130 Cal.App.4th 854, 864.)

When a California court asserting temporary emergency jurisdiction is aware that a child custody determination has been made by another jurisdiction, the California court "shall immediately communicate with the other court." (§ 3424, subd. (d).) "To make an appropriate order under the [UCCJEA], the California court needs to know whether the sister state court wishes to continue its jurisdiction and how much time it requires to take appropriate steps to consider further child custody orders." (*C.T.*, *supra*, 100 Cal.App.4th at pp. 110-111; accord, *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1041.) "The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must

9

be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." (§ 3410, subd. (b).) Additionally, a record must be made of substantive communications between the courts, and the parties granted access to the record. (§ 3410, subds. (c), (d).)

Both California (§ 3427) and Arizona (A.R.S. § 25-1037), in identical language adopted from the Uniform Child Custody Jurisdiction and Enforcement Act, provide a court of the state with exclusive, continuing jurisdiction to make child custody determinations "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Under both statutes the parties are permitted to submit information, and the court is directed to consider all relevant factors in deciding whether it is appropriate for a court of another state to exercise jurisdiction, including the nature and location of the evidence required to resolve the pending litigation.[9] (See *Welch-Doden v. Roberts, supra*, 202 Ariz. at pp. 210-211 [the child's best interests may be considered in the context of a request under A.R.S. § 25-1037 to determine that Arizona, although the "home state," is an inconvenient forum such that jurisdiction should be elsewhere].)

---

[9] Section 3427, subdivision (b), and A.R.S. section 25-1037, subdivision (B), both provide, "Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including: [¶] (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child. [¶] (2) The length of time the child has resided outside this state. [¶] (3) The distance between the court in this state and the court in the state that would assume jurisdiction. [¶] (4) The degree of financial hardship to the parties in litigating in one forum over the other. [¶] (5) Any agreement of the parties as to which state should assume jurisdiction. [¶] (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child. [¶] (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence. [¶] (8) The familiarity of the court of each state with the facts and issues in the pending litigation."

10

Failure to comply with the procedural requirements of the UCCJEA is subject to harmless error analysis.  (*C.T.*, *supra*, 100 Cal.App.4th at p. 111; see *In re Jesusa V.* (2004) 32 Cal.4th 588, 624 ["[w]e typically apply a harmless-error analysis when a statutory mandate is disobeyed, except in a narrow category of circumstances when we deem the error reversible per se"].)  Before any judgment can be reversed for ordinary error, it must appear that the error complained of "has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13.)  Reversal is justified "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 [failure to require statutory procedures for terminating dependency jurisdiction subject to *Watson* harmless error review].)

> 2. *The Juvenile Court Properly Exercised Emergency Jurisdiction; Any Error in Failing To Follow the Procedural Requirements of the UCCJEA Was Harmless*

Angela does not dispute—nor could she on any reasonable basis—the juvenile court properly detained Cristian under section 3424 following the initial hearing on September 19, 2012.  The evidence presented by the Department at the detention hearing established the child had been the victim of a horrendous, three-day beating; and his removal from Zachary and Angela was unquestionably necessary for his protection.  There was significant evidence an emergency existed under the UCCJEA.  (See *In re A.C.*, *supra*, 130 Cal.App.4th at p. 864 ["[e]mergencies under the [UCCJEA] generally involve sexual or physical abuse"].)  Rather, Angela contends the juvenile court failed to follow the required procedures to maintain its jurisdiction after the initial detention order: It did not immediately contact the Arizona court, allow her to participate in communications with Arizona, permit her to argue whether Arizona was an inconvenient forum or hold an additional evidentiary hearing before Arizona ceded jurisdiction.  Because of those procedural errors, Angela contends, the court lacked subject matter jurisdiction; and its January 7, 2013 jurisdiction findings and disposition orders are void.

11

The juvenile court proceedings here, although flawed, substantially complied with the essential procedural requirements of the UCCJEA and fully satisfied the central goals of the act. (See *In re Jaheim B., supra,* 169 Cal.App.4th at p. 1348 ["[t]he purposes of the UCCJEA in the context of dependency proceedings include avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of other states"].) The juvenile court conducted an evidentiary hearing (the detention hearing) before concluding immediate action was necessary to protect Cristian from an ongoing threat of serious physical harm and only then entered a temporary custody order. Angela was present at that hearing, with appointed counsel, and did not challenge the Department's evidentiary presentation. This initial assertion of jurisdiction was fully consistent with, and authorized by, section 3424.

Angela's insistence that some additional evidentiary hearing was necessary for the juvenile court to maintain temporary emergency jurisdiction over Cristian is misplaced. In *People v. Beach* (1987) 194 Cal.App.3d 955 (*Beach*) the validity of a mother's conviction for stealing her child from her husband's custody turned on the jurisdiction of the California court to make a temporary award of custody to the husband under the UCCJA, the predecessor to the UCCJEA. In upholding the custody order and affirming the conviction, the Court of Appeal explained, "The UCCJA involves a multistep process. Initially, the court must determine whether it has jurisdiction over the particular custody dispute. The jurisdictional determination is a 'vitally important preliminary decision.' [Citation.] It should not be made 'in a rush to judgment' but rather 'after a full and fair evidentiary hearing.'" (*Id.* at p. 963.) The *Beach* court's statement was directed to a finding of jurisdiction under any of the four grounds listed in former Civil Code section 5152 for asserting jurisdiction under the UCCJA, not solely the exercise of jurisdiction to prevent an emergency under former Civil Code section 5152, subdivision (c), the forerunner of section 3424. Several subsequent cases involving temporary emergency jurisdiction under section 3424 have either quoted or paraphrased

12

the *Beach* court's "full and fair hearing" language. Contrary to Angela's argument, however, none of those cases holds a detention hearing under Welfare and Institutions Code section 319 at which the parents and child and/or their counsel are present does not constitute the evidentiary hearing required to assert temporary emergency jurisdiction. (See *In re A.C., supra,* 130 Cal.App.4th at p. 864; *C.T., supra*, 100 Cal.App.4th at pp. 107-108.)[10]

To be sure, if the juvenile court had attempted to exercise something beyond temporary emergency jurisdiction—if it had proceeded to adjudicate the dependency petition and to enter disposition orders without the Arizona court first ceding jurisdiction—a further evidentiary hearing would have been required to determine the basis on which the California court had jurisdiction to modify the Arizona court's custody order. (See §§ 3421, 3423; see generally *C.T., supra*, 100 Cal.App.4th at p. 107 ["[e]xcept as authorized by section 3424, a California court may not make an initial custody order or modify a sister state child custody order unless prescribed conditions not here present exist"].) That is the lesson of *Beach* and the mandate of section 3425, which requires notice and an opportunity to be heard be given to all persons entitled to notice before a child custody determination is made under the UCCJEA. But the juvenile court here deferred the jurisdiction/disposition hearing on the dependency petition until information about the California proceedings had been exchanged with the Arizona family law court; and it gave the Arizona court an opportunity to conduct its own hearing to determine whether to exercise its exclusive, continuing jurisdiction. Once the Arizona

---

[10]  We acknowledge there is an implication in the *C.T.* court's quotation from *Beach* that the continued exercise of temporary emergency jurisdiction after an initial detention hearing and removal order requires an additional evidentiary hearing. (See *C.T., supra*, 100 Cal.App.4th at p. 107.) But that was not the issue presented to the court, which was reviewing a jurisdiction finding and disposition order removing the child from his father. (See *id.* at p. 109 ["a finding of emergency under the [UCCJEA] does not contemplate or authorize a finding that the minor is a person described in [Welfare and Institutions Code] section 300"].) In any event, for the reasons discussed, we disagree with the suggestion section 3424 requires a juvenile court to hold a second evidentiary hearing while waiting to learn whether the sister state intends to exercise its exclusive, continuing jurisdiction.

13

court ceded that jurisdiction, the juvenile court was empowered to conduct further hearings on the dependency petition.

Nonetheless, there is some merit to Angela's critique of the juvenile court's conduct of these proceedings. Although the court was aware at the detention hearing in mid-September 2012 that Arizona had made an initial custody order, the court failed to "immediately communicate" with the Arizona family law court. Indeed, although the juvenile court on October 30, 2012 belatedly stated it would contact the Arizona court, the record is devoid of any evidence direct court-to-court communications ever took place. It appears the Arizona court received information about the California dependency proceedings from Mark and one of the Department's investigators, who both appeared (Mark in person; the investigator by telephone) at the family court hearing on November 19, 2012 in Pima County. The California court's information about the Arizona proceedings was limited to the receipt of minute orders from that court.[11] In addition, the court failed to expressly limit the duration of its detention order, which temporarily removed Cristian from Angela's custody, to a period sufficient to permit the Department to seek an appropriate order from the Arizona court as required by section 3424, subdivision (c).

Both of these procedural flaws, however, were harmless. (See *C.T., supra*, 100 Cal.App.4th at p. 111 [statutory requirement to immediately contact the court that had issued the initial custody order is "directory rather than mandatory"; the failure to comply with this procedural step does not invalidate the governmental action to which the procedural requirement relates].) Although the exchange of information was delayed, by the time the Arizona court ceded jurisdiction on November 19, 2012 and well before the juvenile court conducted the jurisdiction hearing on the dependency petition, each court was fully advised of what had transpired in the other. It is not reasonably probable

---

[11] Because the juvenile court did not communicate directly with the Arizona court, Angela's complaint she was not allowed to participate in any of those nonexistent communications adds no weight to her jurisdictional challenge.

14

the delay and indirect method of communication had any impact on the outcome of the case.

Angela's remaining contention that the juvenile court erred in not allowing her to argue whether Arizona was an inconvenient forum is simply mistaken. The determination Arizona, Cristian's home state, was an inconvenient forum and California should continue to assert jurisdiction to decide the pending custody issue was not made by the juvenile court, but by the family law court in Arizona after an evidentiary hearing in a proceeding in which Angela was a party and as to which she had been served with notice. Her election not to participate in the Arizona hearing is not attributable to the juvenile court and surely cannot deprive the court of its authority to act once jurisdiction had been ceded to it.[12]

*C.T.*, *supra*, 100 Cal.App.4th 100, the case upon which Angela places primary reliance, supports our conclusion the juvenile court properly exercised jurisdiction in this case and any procedural error was harmless. In *C.T.* an Arkansas state court had granted father primary physical custody of C.T., who was born in that state, with visitation by mother. During a visit with mother in California, C.T. disclosed father had molested her. Mother obtained a temporary restraining in order in California to prevent C.T.'s return to Arkansas. (*Id.* at p. 104.) The following month the Department filed a section 300 petition alleging C.T. had been sexually abused by father. At the detention hearing the court found a prima facie case C.T. was a person described by section 300,

---

[12]     In light of the factors identified in section 3427, subdivision (b), and A.R.S. section 25-1037, subdivision (B) (see fn. 9, above), a finding by the Arizona court that California was a more appropriate forum is amply supported by the record. Most of the witnesses, including police officers, medical personnel and social workers, as well as Angela herself, were located in California. Indeed, because felony criminal charges were pending against Angela in California for her role in endangering Cristian, the Arizona court may have been unable to compel her attendance had it determined to retain its jurisdiction. Moreover, Angela and Mark had the benefit of appointed counsel in the California dependency proceedings and were thus better able to present relevant evidence and arguments here. Finally, because an initial evidentiary hearing had already been held in the juvenile court, it was more familiar with the facts and issues in the pending litigation and was in a position to more expeditiously decide the matter.

subdivision (d), declared it was exercising emergency jurisdiction over her and gave the social worker discretion to detain C.T. in mother's home. The following month father asked the juvenile court to hold an evidentiary hearing to determine whether it was properly assuming emergency jurisdiction, but the court declined the request and set a jurisdiction hearing. (*C.T.* at p. 105.)[13] At the jurisdiction hearing the juvenile court found C.T. was a person described in section 300, subdivision (d). Only then did the court contact Arkansas. The Arkansas court, however, refused to allow California "'to have further jurisdiction over the matter'" and requested the case be transferred to that state. (*C.T.* at p. 105.) During the conversation between the two courts, which was not recorded, the Arkansas court agreed C.T.'s custody would remain with mother. California sent Arkansas the file and terminated its jurisdiction over C.T. (*Ibid.*)

Father appealed, arguing the juvenile court was not authorized to make jurisdictional findings under the UCCJEA and also failed to comply with its procedural requirements for temporary emergency jurisdiction, including contacting the Arizona state court immediately after the filing of the section 300 petition. Mother appealed, contending the court should not have terminated its dependency jurisdiction over C.T. (*C.T.*, *supra*, 100 Cal.App.4th at pp. 104, 106.) The Court of Appeal reversed the jurisdictional finding, holding the juvenile court was not authorized to make it: "The purpose of the section 300 jurisdictional hearing is to determine whether the child is a person described by section 300; the hearing is a condition precedent to a permanent custody disposition under the dependency scheme. The purpose of the section 3424 [emergency jurisdiction] hearing is limited to a determination of the existence of an emergency, and under the [UCCJEA] emergency jurisdiction may be exercised to protect the child only on a temporary basis. [Citation.] Assumption of emergency jurisdiction does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition." (*Id.* at p. 108.) Nevertheless, the court affirmed the

---

[13] Relying on case law decided under the previous UCCJA statutory scheme, the juvenile court "believed it had no obligation to contact the Arkansas court until it made a true finding under section 300." (*C.T.*, *supra*, 100 Cal.App.4th at p. 111, fn. 9.)

order placing C.T. with mother and terminating its jurisdiction "because the material evidence introduced to support the finding support[ed] an order the court was authorized to make under the [UCCJEA]." (*Id* at p. 104.)[14]

*C.T.* is distinguishable from the present case because the juvenile court made jurisdictional orders of a permanent nature under the umbrella of temporary emergency jurisdiction. Here, in contrast, the court continued the jurisdiction hearing until the Arizona court had ceded jurisdiction, simply maintaining in place its temporary custody order until Arizona had decided whether to exercise its exclusive, continuing jurisdiction. Moreover, as discussed, the court in *C.T.* held any procedural errors in assuming temporary jurisdiction were not prejudicial because it was unlikely there would have been a different outcome if all the statutory procedures had been properly followed. (See *C.T.*, *supra*, 110 Cal.App.4th at pp. 111-112.) That is precisely the situation here. Whatever procedural missteps were made, Angela has failed to demonstrate they had any impact on the final outcome of the dependency proceedings.

## DISPOSITION

Zachary H.'s appeal is dismissed as abandoned. As to Angela H., the orders are affirmed.

PERLUSS, P. J.

We concur:

WOODS, J.

ZELON, J.

---

[14] As in the instant case, there was no challenge to the sufficiency of the evidence supporting the true finding. (*C.T.*, *supra*, 100 Cal.App.4th at p. 109, fn. 5.)