Filed 3/16/15  In re Casey S. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CASEY S., a Person Coming Under the Juvenile Court Law. | B257696 |
| | (Los Angeles County Super. Ct. No. CK27219) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JUDITH S. et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed in part, reversed in part and remanded with directions.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant Judith S.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant Brandon S.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent, Los Angeles County Department of Children and Family Services.

_____

Judith S., mother of one-year-old Casey S., appeals from the jurisdiction findings and disposition order declaring Casey a dependent child of the juvenile court and removing him from her custody after the court sustained a petition pursuant to Welfare and Institutions Code section 300[1] alleging Judith had a long history of drug abuse that rendered her incapable of caring for Casey and had led to termination of her parental rights over her 10 other children. Brandon S., Casey's father, appeals from the order removing Casey from his custody. Brandon, a nonoffending custodial parent, contends there was no evidence there was a substantial danger to Casey's physical health or emotional well being in his custody and the juvenile court failed to consider whether there were any reasonable means to protect Casey other than removing him from Brandon.[2] We affirm the jurisdiction findings and order removing Casey from Judith's custody, reverse the order removing Casey from Brandon's custody and remand for further findings as to whether reasonable means exist to protect Casey short of removal from Brandon.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Dependency Petition and Release of Casey to His Parents with Services*

In June 2013, a little more than a week after Casey's birth, the Los Angeles County Department of Children and Family Services (Department) filed a petition under section 300 alleging Judith had a long history of drug abuse "including opiates, methamphetamine and amphetamine, which renders [her] incapable of providing regular

---

[1]    Statutory references are to this code unless otherwise indicated.

[2]    Brandon and Judith are not married; Brandon is not the father of any of Judith's 10 other children.

2

care" for Casey. The petition also alleged each of Judith's 10 older children, born between 1997 and 2009, had been permanently removed from her custody due to her drug abuse.

In its report prepared for the detention hearing, the Department related Judith's long history with substance abuse and observed that at least four of her children, including her son Matthew, born in 2009, tested positive at birth for amphetamines, methamphetamine and opiates. When Judith entered the hospital in May 2013 to give birth to Casey, she gave a false name and stated she had custody of her other children. As a result of Judith's deception, she and Casey were not immediately screened for drugs. By the time the Department learned of Judith's identity three days later and toxicology tests were performed, she and Casey both tested negative for drugs. The Department stated those results were not significant because, due to the late administration of the test, "any drugs used prior to [Judith's] admission to the hospital . . . would not show up on the test[s]."

Judith denied using drugs during her pregnancy. She told the Department she had left a physically abusive relationship five years earlier in 2009 and, since that time, had managed on her own to stop using drugs. She lived in Tennessee during most of her pregnancy and only recently returned to California to give birth. Judith's mother believed Judith was no longer using illicit substances; she thought Judith had been drug free for about two years. Brandon admitted to a history of substance abuse but stated that, with the help of a drug program, he had not used drugs for six years. Like Judith, he tested negative for drugs. Brandon's mother told social workers Brandon had not used drugs for "well over two years." She knew from watching Brandon during his days as a drug user what it looked like to be under the influence of drugs and had not seen Judith or Brandon under the influence. If she even suspected one or both were on drugs, she would require drug testing before allowing them to live with her.

The Department did not seek Casey's removal at the detention hearing. It advised the court Casey was currently residing with both parents in the home of his paternal grandparents and was not currently at risk, provided the family continued to reside with

3

the paternal grandparents or other "protective adult" as approved by the Department. The Department recommended family maintenance services for Judith and Brandon, including their participation in random drug testing and parenting classes. Pursuant to that recommendation, the court ordered the Department to provide Judith and Brandon with family maintenance services, "strongly urged" both parents to participate in drug testing, substance abuse and parenting programs, released Casey to his parents' custody in the home of his paternal grandparents and continued the matter to August 19, 2013 for a jurisdiction hearing.

2. *The Department's Application To Remove Casey Pending Further Hearing*

On July 30, 2013 the Department filed an application for a warrant authorizing entry into Casey's home to take him into protective custody. The social worker supplied an affidavit attesting that, after the June 11, 2013 hearing, Judith had signed a case plan agreeing to participate in drug trusting, drug rehabilitation programs and parenting classes. The social worker also reminded Brandon of the court's detention order strongly urging him to drug test. However, as of July 29, 2013 Judith and Brandon had missed two drug tests and had not enrolled in any programs. The juvenile court denied the application on the ground the Department had failed to allege facts sufficient to support a removal order.

3. *Casey's Detention, Issuance of Arrest and Protective Custody Warrants, Casey's Placement with Paternal Grandparents*

In its report prepared for the August 19, 2013 jurisdiction hearing, the Department advised the court Judith was about to begin parenting classes, drug counseling and participating in random drug testing. It recommended the court sustain the petition and place Casey with his parents in the home of his paternal grandparents and order family maintenance services. The court continued the matter to September 9, 2013. However, by the time of the September 9 hearing, the Department had changed its recommendation and urged the court to remove Casey. The Department reported Judith had missed all five of her drug test appointments and had not enrolled in any programs. Brandon had missed four drug tests. The matter was continued to December 9, 2013, and then again to

4

January 27, 2014 for a contested jurisdiction hearing. During this time, Judith and Brandon promised to begin drug testing and parenting programs; and Casey remained in his parents' custody.

On January 27, 2014 the Department reported that Judith had missed all (13) drug tests and Brandon had missed 12 of 13 tests. The court ordered the Department to continue making referrals to the parents for purposes of drug testing and advised both parents that their failure to test could have serious ramifications in future proceedings. Casey remained released to his parents. The matter was again continued to April 25, 2014 for the contested jurisdiction hearing. Casey remained in his parents' custody.

On February 27, 2014 the Department filed a second request to remove Casey pending further hearing. In support of this request, the social worker reported Judith and Brandon had failed to participate in any drug testing and had missed more than 15 tests. This time the court granted the application and ordered Casey taken into protective custody pending a detention hearing.

At the March 11, 2014 detention hearing the Department reported that social workers had attempted on four separate occasions to take Casey into protective custody, but had been unable to locate the family. Interviews with maternal and paternal relatives revealed that Judith was in Riverside, but Judith had not left a forwarding number. Paternal grandmother told social workers Judith had said she was afraid to speak to the social worker because, after her last child was detained, she never saw him again.[3] The court ordered Casey detained from his parents, issued arrest warrants for Judith and Brandon and a protective custody warrant for Casey, and continued the matter.

On April 3, 2014 law enforcement officers located Casey and his parents at the home of his maternal grandmother and returned him to his paternal grandparents. On April 4, 2014 the court recalled and quashed the protective custody warrant for Casey as

---

[3] Judith had also attempted to flee with another child, Bryan B., in August 2009 to avoid Bryan's detention. Bryan was detained at large in August 2009 and discovered 18 months later during a parole search of his parents' home. Judith's parental rights over Bryan were terminated in March 2012.

well as the arrest warrants for Judith and Brandon and ordered Casey placed with paternal grandparents with discretion in the Department to permit Brandon to reside in the home with Casey. Both parents signed an attorney order agreeing to voluntarily submit to drug testing. The matter remained on calendar for the contested jurisdiction hearing.

4. *The Contested Jurisdiction Hearing*

At the April 27, 2014 contested jurisdiction hearing Judith moved to dismiss the petition for insufficient evidence. She argued there was no evidence there was any substantial risk of harm to Casey in her custody; she no longer used drugs and her prior history of substance abuse was an insufficient basis to assert jurisdiction. Judith also presented the testimony of her informal sponsor, who had observed Judith twice a week for the last two months at group meetings for drug addicts. During that time the sponsor never saw Judith under the influence of drugs. It appeared to her that Judith was trying to change her life. The sponsor admitted she did not know Judith well or her history with the Department. Her role was to give Judith support; there was no formal rehabilitation program she was supposed to help Judith follow. Judith's 15-year-old son, who had been permanently placed with his maternal grandmother, testified he regularly saw Judith, knew the symptoms exhibited by a person under the influence of marijuana (but not necessarily other drugs) and had not observed Judith under the influence.

The court sustained the petition, finding Judith's actions, including her deceptive behavior at the hospital at Casey's birth, failure to participate in any drug testing (having missed 19 tests during the past year) and absconding with Casey to avoid detention "provide some strong suspicion and support for the notion that they[4] are not sober and they continue to use illicit drugs notwithstanding the testimony of [Judith's son] this morning. . . . I'm not asking mother and father to prove their innocence. That's not the issue. The issue is that opportunities were provided for them to certainly dispute or provide countervailing evidence . . . that would give the court some comfort that there

---

[4] Although the court referred to both Judith and Brandon's actions in its findings, the petition was not amended to include allegations involving Brandon.

6

was no risk to this child.  The father and mother have not provided that."   The court continued the disposition hearing to July 1, 2014 to permit Judith and Brandon to contest the Department's recommendations.

5. *The Disposition Hearing and Order*

At disposition the Department reiterated its arguments that Judith had failed to address her substance abuse problem, which posed a substantial danger to Casey, and urged the court to deny reunification services to Judith pursuant to section 361.5, subdivision (b)(10) and (11).[5]  As to Brandon the Department acknowledged he was a nonoffending parent but argued removing Casey from his custody was necessary for Casey's protection:  Brandon was in a current relationship with Judith and had fled with Judith and Casey to escape the Department's supervision during these proceedings.  In addition, he had a history of substance abuse and failed to drug test for nearly one year despite signing an attorney order agreeing to do so voluntarily.  The Department recommended the court order family reunification services for Brandon and monitored visitation for both parents with discretion in the Department to liberalize the visitation.

The court adopted the Department's recommendation, declared Casey a dependent child of the court, removed him from both parents' custody and placed him with his paternal grandparents.[6]  The court denied family reunification services for Judith, ordered

---

[5]     Section 361.5, subdivision (b)(10), vests the court with discretion to deny reunification services to a parent when the court finds by clear and convincing evidence that the child's sibling has been removed pursuant to section 361, the parent failed to reunify with that child, and the parent has not subsequently made a reasonable effort to treat the problems that led to the removal of the child's sibling.  Subdivision (b)(11) affords the same discretion to the juvenile court when parental rights over the child's sibling have been terminated and the parent failed to make reasonable efforts to treat the problems that had led to the termination.

[6]     As to Brandon the court stated, "[F]ather does appear to be nonoffending under the present petition as it is constituted.  But, again, he failed to submit to testing.  The court will find that there is a detriment to releasing the one-year-old, who is preverbal . . . to father, notwithstanding father's counsel's request that as a nonffending parent the child be released to him.  The court finds that it's not in the best interest of the child to release the child to the father."

7

six months of family reunification services for Brandon, including drug testing, counseling and parenting classes and monitored visitation for both parents with discretion in the Department to liberalize the visitation.

## DISCUSSION

1. *Standard of Review*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdiction findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.; In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

2. *Substantial Evidence Supports the Court's Jurisdiction Findings and Disposition Order as to Judith*

 a. *Jurisdiction*

Section 300, subdivision (b), authorizes dependency court jurisdiction over a child when the child's parent is unable to provide regular care for the child due to the parent's substance abuse. Subdivision (j) of section 300 applies when the child's sibling was abused or neglected or at risk of abuse or neglect as defined in other subdivisions (including subdivision (b)) and there is a substantial risk the child who is the subject of the dependency proceedings will be also be abused or neglected. "[T]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child presently needs the court's

8

protection. (*Ibid*.) A parent's ""'"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216; accord, *In re S. O.* (2002) 103 Cal.App.4th 453, 461; *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565 ["previous acts of neglect, standing alone, do not establish substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur"].)

While acknowledging her past substance abuse issues, Judith contends there was no evidence she was a current substance abuser. Both maternal and paternal grandmothers reported they had not recently seen Judith under the influence of drugs; Judith and Casey both tested negative for drugs in the hospital; and by all social workers' accounts, Casey was thriving in her care. Indeed, every report prepared by the Department stated Casey was doing well and had received proper medical care and immunizations. Accordingly, she argues, there was no evidence to support the court's jurisdiction finding. Furthermore, by making jurisdiction findings based solely on her failure to participate in drug testing, she argues the court improperly placed the burden on her to prove she was no longer abusing drugs rather than on the Department to establish Casey was at risk when in her care. (See *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318 [Department has burden of showing by preponderance of evidence how child has been or is at risk of harm].)

Judith's argument, which relies on a selective recitation of helpful evidence, disregards substantial circumstantial evidence that she had not resolved the severe substance abuse problems that had led to the permanent removal of her other children. Although Judith tested negative for drugs at the hospital, her deception regarding her identity and past history made it impossible for those tests to be conducted in a timely fashion. The court reasonably inferred that Judith's dishonesty was purposefully calculated to prevent detection of drug use during her pregnancy with Casey,[7] thereby

---

[7]     There was some evidence—a nurse's observation—that Casey was "shaking the first day" after birth; the nurse reported "no other" withdrawal symptoms were seen.

9

avoiding the immediate removal of her newborn child as had happened with several other of her children. Further, Judith repeatedly promised to test for drugs, signed both a case plan and an attorney order to that effect, and then evaded all drug testing for nearly one year, each time offering a different excuse for her failure to participate in testing. In addition, Judith absconded with Casey for nearly one month after the detention order to escape the Department's and the court's supervision. Although Casey continued to be well cared for, the court was under no obligation to disregard reasonable inferences that Judith remained a current substance abuser, which placed Casey, an infant, at risk. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767 [for children of "tender years"—under six years old—"the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm"]; *In re Christopher R., supra,* 225 Cal.App.4th at pp. 1218-1219 [same].) Substantial evidence supports the court's jurisdiction findings.[8]

b. *Disposition*

Before the court may order a child physically removed from his or her parent's physical custody, it must find by clear and convincing evidence that the child would be at substantial risk of physical or emotional harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c); *In re T.V.* (2013) 217 Cal.App.4th 126, 135; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) As discussed, there was substantial evidence that Judith's drug use had been profoundly detrimental to her other 10 children, four of whom had been born with drugs in their systems and all of whom had been permanently removed from her custody. There was also substantial evidence from which the court could infer that, despite her protestations to the contrary, Judith continued to struggle with her addiction and there

---

[8]    Judith's reliance on *In re Rebecca C.* (2014) 228 Cal.App.4th 720 is misplaced. In that case Division Eight of this court held there was insufficient evidence to support the juvenile court's jurisdiction finding that mother's current substance abuse created a substantial risk of physical harm to her child. However, the child involved was a teenager, not one of "tender years," so the presumption of the parent's inability to properly care for her child was not applicable.

10

was no reasonable means to protect Casey other than removing him from Judith's custody. Significantly, this is not a case where the court or the Department acted hastily. Indeed, both the court and the Department made significant efforts to avoid Casey's removal by repeatedly urging Judith to participate in family maintenance services, but those efforts ultimately proved unsuccessful because, with limited exception, Judith failed to utilize the services offered. Under those circumstances the decision to remove Casey from her custody was proper. (See *In re Drake M., supra,* 211 Cal.App.4th at p. 767; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.)

     3. *The Removal of Casey from Brandon's Custody Was Not Supported by Substantial Evidence*

In ordering Casey's removal from Brandon's custody, the court cited Brandon's history of substance abuse and his failure to drug test even after signing an attorney order in April 2014 agreeing to voluntarily participate in random drug testing.[9] As discussed, a parent's history of substance abuse and refusal to voluntarily submit to random drug testing, absent some direct or circumstantial evidence of current substance abuse or other risk of harm, is not sufficient to justify removal. Impliedly conceding the absence of facts from which Brandon's own current drug use may be reasonably inferred, the Department instead emphasizes Brandon's close relationship with Judith and his decision to flee with Judith to prevent Casey's detention as evidence that Brandon lacks insight into Judith's history of, and current struggles with, substance abuse. To be sure, this absence of insight may well be a sufficient basis to find Casey's removal from Brandon's custody necessary to protect Casey (cf. *In re H.E.* (2008) 169 Cal.App.4th 710, 724 [mother's lack of insight into emotional harm her behavior had inflicted on her children was substantial evidence supporting removal order]), but those facts were not identified

---

[9]    As the juvenile court recognized, Brandon's status as a nonoffending parent does not preclude removal of Casey from his custody if removal is necessary to protect the child and there are no other reasonable means available to accomplish that protection. (See *In re P.A.* (2007) 155 Cal.App.4th 1197, 1212 [court may find detriment to child if returned to nonoffending parent; absence of jurisdiction finding as to that parent does not preclude removal].)

by the court as the basis for its finding. (See § 361, subd. (d) [the court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home and "state the facts on which the decision to remove the minor is based"].) If it is Brandon's relationship with Judith that creates a substantial risk of harm to Casey, the court must consider whether there are reasonable means to protect Casey that are less drastic than removing him from Brandon. (*Ibid*.; see *In re Ashly F*. (2014) 225 Cal.App.4th 803, 810 [remand is necessary for court to make proper findings as to whether there were reasonable means to protect child other than removing child from nonoffending father; "'reasonable means' of protecting the children that should have at least been considered include unannounced visits by [Department] . . . and removing [offending] Mother from the home"]; see generally *In re Henry V*. (2004) 119 Cal.App.4th 522, 530 ["[b]ecause we so abhor the involuntary separation of parent and child, the state may disturb an existing parent-child relationship only for strong reasons and subject to careful procedures"].)

On this record there is a reasonable probability that, had the proper inquiry been made, the court would have found the Department's request for Casey's removal from Brandon not supported by clear and convincing evidence. (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1098-1099 [reversal is justified only when it is reasonably probable result more favorable to appealing party would have been reached in absence of the error]; *In re Ashly F., supra,* 225 Cal.App.4th at p. 810 [same].) Accordingly, the disposition order as to Brandon must be reversed, and the matter remanded for a new disposition hearing. On remand, the juvenile court shall make its decision based on the facts existing at the time of the further proceedings.

## DISPOSITION

The jurisdiction findings and disposition order as to Judith are affirmed.  The disposition order as to Brandon is reversed, and the matter remanded for further proceedings not inconsistent with this opinion.


PERLUSS, P. J.


We concur:


ZELON, J.


FEUER, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.