Filed 4/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re RASHAD D., a Person Coming Under the Juvenile Court Law. | B307061 |
| | (Los Angeles County Super. Ct. No. 20CCJP01245A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>R.D.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha Matthews, Judge.  Appeal dismissed.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Marrisa Coffey, under appointment by the Court of Appeal, for Minor.

_____

**INTRODUCTION**

The juvenile court declared three-year-old Rashad D. a dependent child of the court after sustaining an amended petition under Welfare and Institutions Code section 300, subdivision (b)(1),[1] alleging his mother's six-year history of illicit drug use rendered her incapable of providing regular care and supervision of the child. On appeal R.D. (Mother) contends evidence of her past substance abuse and a fear she would relapse were insufficient to support a finding Rashad was at substantial risk of serious physical harm, as required for the exercise of dependency jurisdiction.

Three months after sustaining the petition, while Mother's appeal of the juvenile court's jurisdiction finding and disposition order was pending, the court terminated jurisdiction and issued a custody order awarding sole physical custody of Rashad to Mother and joint legal custody to Mother and Deon O., Rashad's father. Mother contends this development does not moot her appeal because she previously had sole physical and legal custody of Rashad and the new custody order, by awarding Deon joint legal custody and expanding his monitored visitation rights,

---

[1]   Statutory references are to this code unless otherwise stated.

2

adversely affects her on an ongoing basis.  Mother also asks us to exercise our discretion to decide the case as one raising an issue of broad public interest that is likely to recur.

We dismiss the appeal.  Mother is correct that termination of dependency jurisdiction does not necessarily moot an appeal from a jurisdiction finding that directly results in an adverse juvenile custody order.  But in most cases, including the one at bar, for this court to be able to provide effective relief, the parent must appeal not only from the jurisdiction finding and disposition order but also from the orders terminating jurisdiction and modifying the parent's prior custody status.  Without the second appeal, we cannot correct the continuing adverse consequences of the allegedly erroneous jurisdiction finding.

As for Mother's alternate contention, this case does not present an issue of broad public interest.  The highly fact-specific question whether, by the time of the jurisdiction hearing, Mother's current circumstances, in light of her extended history of substance abuse, created a substantial risk of serious physical harm to her young son is the type of issue presented to appellate courts multiple times every year.  (See *In re David B.* (2017) 12 Cal.App.5th 633, 654 [no basis exists for exercising discretion to hear otherwise moot appeal "to address the fact-specific questions whether David B. was described by section 300 and whether the juvenile court's determination on that point is supported by substantial evidence"]; *In re M.C.* (2011) 199 Cal.App.4th 784, 802 [deciding issues of statutory interpretation and separation of powers despite mootness, but declining to address whether sufficient evidence supported juvenile court order because that was "not an issue of continuing public importance"].)

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Initial Dependency Case*

In October 2017 the juvenile court sustained a petition filed by the Los Angeles County Department of Children and Family Services (Department) pursuant to section 300, subdivision (b)(1), on behalf of then-six-month-old Rashad, alleging Mother had a four-year history of illicit drug use, was a current user of PCP and cocaine and had used PCP and cocaine during her pregnancy with Rashad, all of which rendered her incapable of providing regular care and supervision of her child; Deon knew of Mother's drug use and failed to protect Rashad; and Deon also had a history of substance abuse. Rashad was removed from Mother's and Deon's custody.

Mother participated in reunification services. Deon failed to make substantial progress in his case plan. The juvenile court terminated jurisdiction in May 2019 and awarded Mother sole physical and legal custody of Rashad. Deon was limited to one monitored visit each year, "on or near Father's Day upon Father's request."

2. *The New Dependency Petition*

In early February 2020 the Department received a report that Mother was seen at a drug house and had relapsed. The maternal grandmother, with whom Mother had been living when the prior dependency case closed, said she had been unable to contact Mother for a month. A maternal uncle informed the social worker Mother told him in April 2019 that she had started using drugs again. He believed Mother had relapsed based on her weight loss (estimated at 150 pounds) and the fact she was out "all hours of the night before disappearing with the child."

When reached via telephone by a Department social worker on February 20, 2020, Mother said she was living in San Bernardino County. She declined to provide her address or agree to an interview.

On March 3, 2020 the Department filed a new dependency petition under section 300, subdivision (b)(1), alleging Mother "has a six year history [of] illicit drug use including use[ ] of PCP and cocaine, and is a current abuser of illicit substances, which renders the mother incapable of providing regular care and supervision of the child." The petition also alleged that Deon failed to protect Rashad when he knew of Mother's drug use, had a history of substance abuse and was a current abuser of substances. Based on the Department's detention report, the court found a prima facie showing had been made that Rashad was a child described by section 300 and that detention from the parents was necessary to protect the child.

Interviewed for the jurisdiction/disposition report filed May 15, 2020, Mother acknowledged her history of substance abuse but denied she was currently using any drugs. She told the dependency investigator she was living with her boyfriend in Culver City and was sober and participating in a support group. As reflected in subsequent reports prior to the rescheduled jurisdiction hearing,[2] Mother had five negative drug tests and two no-shows.

---

[2]     The jurisdiction hearing, originally scheduled for May 1, 2020, was continued to July 22, 2020 due to COVID-19 restrictions. Mother made her initial appearance on July 22. At that time the court ordered Rashad released to Mother under the continued supervision of the Department on condition that she

5

Contacted again on July 2, 2020 the maternal uncle explained the family's inability to communicate with Mother earlier in the year had caused their fear she might have relapsed. He explained he had not seen Mother use drugs or get drunk after her prior case had closed, and he currently felt Rashad was safe with Mother.

In its original jurisdiction/disposition report the Department recommended the court sustain the petition as written and remove Rashad from the care and custody of Mother and Deon to ensure the child's safety. In addition to Mother's significant history of drug abuse, the Department was concerned "regarding mother's lack of cooperation and limited communication during the referral and dependency investigation."

In a supplemental report two months later the Department requested the court dismiss the petition for lack of evidence. The report stated it was the Department's "impression" "the safety and well-being of child Rashad can be ensured in the care and custody of [Mother]."

3. *The Jurisdiction/Disposition Hearing*

At the outset of the jurisdiction hearing the court confirmed the Department's position was that the situation had stabilized and the petition should be dismissed. Counsel for Rashad asked the court to sustain the first count of the petition relating to

---

and Rashad reside with the maternal grandmother. The jurisdiction hearing was continued to August 5, 2020.

Mother, but to conform it to proof by deleting the language concerning current substance abuse.[3]

Mother testified she had been sober for three years and regularly talked to her sponsor. She denied telling her brother she had relapsed and said she had not had a significant weight loss. Explaining why she had left the maternal grandmother's home without telling her family where she and Rashad were, Mother said she had been looking for a place to live with her boyfriend and did not feel she needed to communicate with her family.

Following argument of counsel the court sustained "a fairly heavily amended version of b-1" to conform to proof, noting there really was no evidence of current abuse of illicit substances. As amended, the sustained count stated only that Mother's history of illicit drug use placed Rashad at substantial risk of serious physical harm. The court struck all references to Deon, who was determined to be nonoffending in the amended petition.

The court declared Rashad a dependent child of the juvenile court. The court ordered that Rashad remain released to Mother with family maintenance services; set a three-month, rather than a six-month, progress review; and, "if everything is okay, then dismiss the case then." Mother's case plan included drug testing and Narcotics Anonymous or other substance abuse aftercare. Deon was provided with enhancement services and a written schedule for monitored visitation. Mother filed a timely

---

[3]    Minor's counsel added, if Deon was not seeking custody, she would "submit on striking him from the petition and just reverting to the [juvenile custody order] that is in place from the prior case."

7

notice of appeal from the August 5, 2020 jurisdiction finding and disposition order.

4. *Termination of Dependency Jurisdiction*

At the section 364 review hearing on November 4, 2020, the court found the conditions that justified its initial assumption of jurisdiction no longer existed and were not likely to exist if court supervision was withdrawn. Because continued supervision was no longer required, the court terminated jurisdiction. In its minute order the court awarded sole physical custody to Mother and joint legal custody to Mother and Deon and ordered monitored visits for Deon one time per week for three hours per visit with a mutually agreed-upon monitor. The court stayed its order until November 10, 2020 for receipt of a proposed juvenile custody order to be prepared by Mother's counsel. On November 10, 2020 the court lifted its stay, terminated jurisdiction, and signed and entered the juvenile custody order pursuant to section 362.4.[4]

Mother did not appeal the November 4 and 10, 2020 orders terminating dependency jurisdiction and issuing the juvenile custody order.

## DISCUSSION

On appeal Mother, while acknowledging someone with her history of substance abuse is at risk of relapse and that this risk is always worrisome, contends none of the factors the court identified as red flags—the maternal uncle's concerns, her

---

[4]     Concurrently with filing his brief in support of the juvenile court's jurisdiction finding, Rashad moved for judicial notice of the orders terminating dependency jurisdiction and its juvenile custody order. We granted the motion.

8

unexplained absence from the maternal grandmother's home and failure to communicate with her family, and her lack of initial cooperation with the Department—constituted substantial evidence she was leaning toward, let alone experiencing, a relapse. Because her opening brief was filed only two days before the three-month review hearing scheduled for November 4, 2020, Mother also argued termination of dependency jurisdiction would not moot her appeal because the erroneous jurisdiction finding and disposition order could influence the Department's decision to file yet another dependency petition in the future.

As discussed, the juvenile court did terminate jurisdiction in November 2020 and concurrently issued a juvenile custody order that modified the prior order awarding Mother sole physical and legal custody of Rashad. Mother contends in her reply brief she is adversely affected by this change in the custody orders, which she asserts is based on the erroneous jurisdiction finding, thereby justifying appellate review of the merits of her challenge to that finding.

An order terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488; see *In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 [as ""a general rule it is not within the function of the court to act upon or decide a moot question or speculative, theoretical or abstract question or proposition, or a purely academic question, or to give an advisory opinion on such a question or proposition""].) "[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60; see *In re J.P.* (2017) 14 Cal.App.5th 616, 623 [a dependency ""appeal becomes moot

when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief"'"]; *In re E.T.* (2013) 217 Cal.App.4th 426, 436 ["[a]n appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief"].)

However, dismissal of a dependency appeal for mootness following termination of jurisdiction "is not automatic, but 'must be decided on a case-by-case basis.'" (*In re C.C.*, *supra*, 172 Cal.App.4th at p. 1488.) As Mother argues, several court of appeal decisions have held an appeal from jurisdiction findings is not mooted by termination of jurisdiction when the sustained findings prompted a juvenile custody order that has continuing, adverse effects on the appellant's custody or visitation rights. (E.g., *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431-1432 [appeal from jurisdiction findings not moot where sustained findings have an adverse effect on custody or visitation rights]; *In re A.R.* (2009) 170 Cal.App.4th 733, 740 [termination of jurisdiction did not moot appeal where father's contact with child was "severely restricted as a direct result of the jurisdictional and dispositional findings and orders"]; *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1547-1548 [father's appeal not made moot by termination of jurisdiction where juvenile court awarded sole physical and legal custody to mother and restricted father's visitation]; cf. *In re N.S., supra*, 245 Cal.App.4th at p. 61 [appeal moot where jurisdiction findings were not the basis of the custody and visitation order].)[5]

---

[5] Other courts have held termination of dependency jurisdiction does not moot an appeal if the challenged finding

10

We agree an erroneous jurisdiction finding can have unfavorable consequences extending beyond termination of dependency jurisdiction and that termination does not necessarily moot an appeal of such a finding. But to the extent an appellant argues, as here, that the challenged jurisdiction finding resulted in an adverse juvenile custody order and seeks to have that custody order set aside,[6] in addition to the appeal from the jurisdiction finding, an appeal from the orders terminating jurisdiction and awarding custody is necessary for this court to be able to provide effective relief. Unless the appellate court reverses or vacates the order terminating dependency, the juvenile court has no jurisdiction to conduct further hearings in

---

could have consequences for the appellant beyond jurisdiction (e.g., *In re Briana V.* (2015) 236 Cal.App.4th 297, 309) or if the purported error "'"infects the outcome of subsequent proceedings"'" (e.g., *In re E.T.*, *supra*, 217 Cal.App.4th at p. 436). Mother's original argument that the jurisdiction finding might influence the Department's decision to file a new dependency petition at some point in the future, however, is too speculative to justify appellate review of an otherwise moot case. (See *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1493 [party seeking discretionary review must identify specific or practical negative consequences arising from the jurisdiction finding that would justify such review].)

[6] Although Mother specifically asks us only to reverse the jurisdiction finding and disposition order, as her argument regarding mootness makes plain, the purpose of the appeal is to have the juvenile custody order set aside. Without more, reversal of the jurisdiction finding, which accurately stated Mother has an extended history of drug abuse, accomplishes nothing of substance for her.

11

the now-closed case, including modification of its custody order. (See § 304 [juvenile court has exclusive jurisdiction to hear proceedings regarding custody "until the time that the petition is dismissed or dependency is terminated"]; Cal. Rules of Court, rule 5.620(a) [same].) Because Mother did not appeal those orders, they are not now before us or otherwise subject to appellate review. And because the juvenile court terminated its jurisdiction over Rashad and that termination is final, a remand for further proceedings in the juvenile court would be meaningless. (See *In re Michelle M.* (1992) 8 Cal.App.4th 326, 330 [dismissing father's appeal from jurisdiction findings and disposition orders, concluding there was no effective relief that could be granted because "the juvenile court no longer has jurisdiction and we are only reviewing that court's ruling," as opposed to the subsequent ruling dismissing jurisdiction and transferring the matter to the superior court; "[a]ppellant's remedy was to attack the juvenile court's order terminating jurisdiction in order to raise the issues he urges before us"]; see also *In re J.S.* (2011) 199 Cal.App.4th 1291, 1295 [challenge to denial of motion to dismiss dependency proceedings leading to adverse custody and visitation order not mooted by subsequent termination of jurisdiction; "[t]he exit orders are also pending appeal, and include adverse custody and visitation orders, which were entered as a direct result of matters challenged in this appeal"].)[7]

---

[7] Mother is not left entirely without a remedy. Pursuant to Welfare and Institutions Code section 302, subdivision (d), she may seek modification of that order in a proceeding under Family Code section 3021 if she can demonstrate "there has been a

12

Our colleagues in Division Eight of this court in *In re J.P.,*
*supra*, 14 Cal.App.5th 616 recognized the significance of
reviewing the termination order in these circumstances.  The
court declined to dismiss a father's challenge to the adequacy of
his reunification plan as moot following termination of
dependency jurisdiction because his failure to reunify had led to
the loss of custody and restricted visitation rights.  (*Id.* at p. 623.)
After holding the juvenile court had abused its discretion in
failing to order effective reunification services for the father, the
*J.P.* court reversed the portion of the disposition order requiring
the father to participate in a full alcohol treatment program and
remanded the matter to the juvenile court to reconsider its order
terminating jurisdiction, explaining, "We do not direct that the
trial court necessarily unravel its subsequent termination of
jurisdiction, but simply leave it to the trial court to determine the
appropriate remedy given its erroneous disposition order.  But
the trial court must at least reconsider its termination order in
light of the views we have expressed."  (*Id.* at p. 630; see *id.* at
pp. 630-631 ["[t]he matter is remanded to the dependency court to
reconsider its order terminating jurisdiction and for further
proceedings consistent with this opinion"].)  However, the father
had not appealed the order terminating jurisdiction; and the
court of appeal did not address its authority, absent such an
appeal, to direct the juvenile court to reconsider that order or to
conduct further proceedings in the now-closed dependency case.

---

significant change of circumstances since the juvenile court
issued the order and modification of the order is in the best
interests of the child."

13

Contrary to our holding today and that of the court in *In re Michelle M.*, *supra*, 8 Cal.App.4th 326, the court of appeal in *In re Joshua C.*, *supra*, 24 Cal.App.4th 1544 expressly held appeal of the order dismissing the juvenile court proceedings is not required to permit continued appellate review of the jurisdiction findings upon which an adverse juvenile custody order at termination was based. (*Id.* at p. 1549.) Unlike the case at bar, however, the juvenile court had issued its custody order and terminated jurisdiction at the disposition hearing. (*Id.* at p. 1547.) Although the father directly challenged only the adverse jurisdiction finding on appeal, it appears he appealed from the orders made at the disposition hearing, which arguably would have permitted the appellate court to reverse the order terminating dependency jurisdiction if necessary to provide the relief he requested. In any event, because it affirmed the juvenile court's findings after declining to dismiss the appeal as moot (*id.* at p. 1549), the *Joshua C.* court did not need to address how it could grant effective relief with the juvenile case closed if the termination order was not before it. Similarly in *In re J.K.*, *supra*, 174 Cal.App.4th 1426, the juvenile court issued its custody order and terminated jurisdiction at the disposition hearing. (*Id.* at p. 1431.) Although this court found the appeal was not moot, we affirmed the jurisdiction findings and disposition order and did not reach the question of constructing an effective remedy. (See *id.* at p. 1440.)

Our conclusion as to the need for Mother to have appealed the orders terminating dependency jurisdiction and awarding joint legal custody to Deon and her is not altered by the fact she argues, in effect, the juvenile court lacked jurisdiction to make the new custody order because there was insufficient evidence

14

she had placed Rashad at substantial risk of serious physical harm.  As the Supreme Court has explained, "[J]urisdictional errors are of two types.  'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.'" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660.)  However, the term "lack of jurisdiction" may also be applied when the court possesses jurisdiction over the subject matter and parties in the fundamental sense but "'has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.'" (*Id.* at p. 661.)  "When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.'" (*Id.* at p. 660.)  By contrast, when a court has fundamental jurisdiction to act but acts in excess of jurisdiction, its actions are merely voidable, "[t]hat is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.'" (*Id.* at p. 661.)  While a lack of fundamental jurisdiction may be raised at any time, a challenge to a ruling in excess of jurisdiction is subject to forfeiture if not timely asserted. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 716, fn. 7; *People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6.)

Here, the juvenile court had jurisdiction in a fundamental sense—authority over the subject matter and the parties.  Any orders made following an erroneous finding to sustain the section 300 petition were, at most, acts in excess of jurisdiction. (See *In re Angel S.* (2007) 156 Cal.App.4th 1202, 1209 [when a

court with fundamental jurisdiction over the persons and subject matter in question acts contrary to a statutory procedure or applicable rules, it does not act without jurisdiction, but rather in excess of jurisdiction; "[a]cts in excess of jurisdiction are not void in any fundamental sense""].)[8]  Accordingly, by not appealing the November 4 and 10, 2020 orders terminating dependency jurisdiction, and awarding joint legal custody to Deon and expanding his monitored visitation with Rashad, Mother forfeited any challenge to those rulings, including to the juvenile court's jurisdiction to issue them.  Absent that additional appeal, we cannot provide Mother effective relief.

## DISPOSITION

The appeal is dismissed.

PERLUSS, P. J.

We concur:


SEGAL, J.                              FEUER, J.

---

[8]      In *In re Cristian I.* (2014) 224 Cal.App.4th 1088, in contrast, the mother argued the juvenile court's jurisdiction findings and disposition order placing her severely abused son with his father were void because the Arizona courts had exclusive jurisdiction over custody matters under the Uniform Child Custody Jurisdiction and Enforcement Act and the Los Angeles juvenile court lacked fundamental jurisdiction to make anything other than an initial, temporary emergency order. (*Id.* at p. 1092.)  Accordingly, we held, although the mother had not appealed the juvenile court's subsequent order terminating dependency jurisdiction, her appeal of the jurisdiction findings and disposition order was not moot.  (*Id.* at p. 1096, fn. 6.)

16