Filed 1/5/24  In re R.C. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re R.C. et al., Persons Coming Under the Juvenile Court Law. | D082697 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. J521249A-C) |

APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Reversed and remanded for further proceedings.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

A.C. (Mother) appeals the juvenile court's dispositional order removing her three children, then ages seven, four, and one, from her custody. She challenges the sufficiency of the evidence used to support the dispositional order under Welfare and Institutions Code[1] section 361, subdivision (c).

Although sufficient evidence supports the juvenile court's conclusion that there remained a substantial danger to the children's well-being, it is unclear from the record whether the juvenile court considered there were reasonable means to protect the children short of removal from their Mother's custody. We therefore reverse the dispositional order and remand this matter for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A.C. is the mother of R.C., R.G., and E.C., and Zachary C. (Zachary) is the biological father of the youngest child E.C.[2] Although they are no longer romantically involved, Mother and Zachary dated and occasionally cohabited and co-parented the children for three to four years. Their conduct during those years triggered numerous referrals to child welfare services (CWS) and calls to law enforcement. From June 2019 through April 2022, there were six allegations of general neglect reported to CWS, one of which was substantiated, and law enforcement responded to domestic violence calls on five occasions from November 2022 through January 2023.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] The presumed father of R.C. is deceased, and the alleged father of R.G. was not located by the Agency.

Police reports submitted by the Agency detail the domestic violence history underlying this dependency case.[3] On October 18, 2022, while Mother was trying to get in the shower, Zachary struck her right thigh using his knee. Zachary was arrested. On January 26, 2023, Zachary punched Mother in the face with a closed fist approximately five times. Zachary fled the scene and was not arrested. Although Mother sustained lacerations to her nose and chin, she declined an emergency protective order (EPO).

The San Diego County Health and Human Services Agency (Agency) became involved following an incident on June 7, 2023. Zachary reported Mother threw a chair at him while he was holding E.C., while Mother claimed it was Zachary who threw a chair at her and denied E.C. was in his arms. Zachary had redness and swelling on his left forearm, and Mother was arrested as the dominant aggressor. The officer reported Mother was yelling and kicking the police vehicle while being transported to jail. After the officer told her that he would be making a full report to CWS based on the incident and her demeanor, she apologized and was transported without further resistance.

Following the incident, Zachary obtained an EPO that was scheduled to expire on June 14, 2023, and worked with the Agency to create a safety plan. However, Zachary did not follow the safety plan and permitted Mother to return home after she was released from jail.

On June 21, 2023, the Agency created a second safety plan with Mother to which Zachary verbally agreed. Both parents agreed to remain safe and sober while caring for the children. Mother agreed to not "feed into"

---

[3] This is the first dependency case involving Mother, while Zachary had two prior dependency cases in Riverside County that resulted in the removal of his five other children.

arguments with Zachary and call 911 if any arguments escalated. She also agreed to go to a neighbor if she felt her safety was at risk, and her friend would check on Mother and the children by phone and in person.

A. *Dependency Petition and Detention Report*

On June 26, 2023, the Agency filed its dependency petition and requested the children be detained "until the parents can demonstrate a willingness to address the protective issues of domestic violence and substance abuse." The Agency's detention report dated June 27, 2023, reflects both parents had refused to participate in voluntary services, and they accused each other of alcohol and drug use. Zachary admitted using "everything except heroin" and Mother admitted using alcohol and marijuana. Although Mother stated she had "never" used methamphetamines, a prior Agency referral indicated she tested positive on May 14, 2020, for methamphetamines, amphetamines, and marijuana.

The Agency expressed "more concern" over Zachary's prior child welfare history with his other children and it appeared the same patterns were repeating.[4] Although Zachary had agreed to remain outside of the home, the Agency did not believe this was a viable safety plan "due to concerns of the [M]other's ongoing substance use, failure to follow previous safety plan, and the parents['] continued escalation since the [M]other returned back to the home."

The following day, June 27, 2023, Mother obtained a temporary no-contact restraining order protecting her and the three children from Zachary and ordering him to move out of the home. Two days later, Mother reported

---

[4]     The safety concerns in Zachary's two prior dependency cases involving his other children included his abuse of controlled substances, inappropriate discipline of the children, anger management issues, and verbal and physical abuse of his live-in girlfriend in the presence of the children.

4

Zachary attempted to enter her home and she was in fear for her safety. Zachary fled the scene prior to the arrival of police.

At the June 28, 2023 detention hearing, the juvenile court found there was a substantial danger to the children if they remained in Mother's home and ordered them detained at the Polinsky Children's Center.

B. *Jurisdiction/Disposition Report*

The Agency's July 19, 2023 jurisdiction/disposition report includes the following: "The parents will work with their safety network and with the Agency to develop the skills they will need to remain free from domestic violence relationships, and to parent the CHILDREN in a safe environment free from violence and substance abuse." At that point, both parents tested negative for all substances, but the Agency was still concerned "substances play a significant role in the issues that have plagued this family." The Agency also expressed that it was "highly concerned" by Zachary's communication difficulties and the impact on his ability to engage in services, and it continued to have "strong concerns" regarding the parents' abilities to maintain the children's safety based on the significant history of domestic violence between the parents.

The Agency remarked that Mother was "very enthusiastic" to receive services and pursue her restraining order against Zachary but noted that "[i]t was only after the detention of the children the [M]other took firm actions to protect herself and the children by obtaining a restraining order." Recognizing Mother had exhibited her protective capacity for only a brief period of time and it had yet to observe Mother actually engaged in services, the Agency concluded: "When assessed alongside the other complicating factors still being evaluated by the Agency, there does not appear to be a

5

viable way to maintain the children safely in the home in the immediate future."

C. *Addendum Reports and Ex Parte Order*

The Agency submitted an addendum report dated July 26, 2023, requesting placement for all three children in the home of E.C.'s aunt and uncle in Riverside, California. The report mentioned Mother had informed the Agency she was sober from drugs and alcohol, had changed the locks on her home, and was pursuing a permanent restraining order against Zachary to protect herself and the children.

On August 1, 2023, the juvenile court granted the Agency's ex parte request to transition E.C. and R.C. from the Polinsky Children's Center to the home of E.C.'s aunt and uncle in Riverside and to have R.G. evaluated by an allergist since the home contained three dogs. The allergist confirmed R.G. was allergic to dogs and prescribed Zyrtec as needed. On August 10, 2023, over Mother's objection, the juvenile court granted the Agency's request to place R.G. in the same home as his siblings and authorized the administration of Zyrtec to manage his allergy symptoms.

In its August 15, 2023 addendum report, the Agency reported Mother was participating in services and maintaining regular visitation with the children. In addition to changing her locks, Mother had created and maintained a safety plan that included where she parked her car and where she kept her purse, phone and keys, and a code word with neighbors if an

incident occurred. She had also filed a police report after Zachary placed a letter in her mailbox in violation of the restraining order.[5]

The Agency reported it was "glad to see strong engagement from the [M]other, both with the Agency and with her referred services. The [M]other is communicative regarding her needs, and advocates for her children. She has been visiting regularly and has good visits with the children."

Conversely, the Agency reported it had poor communication with Zachary, who continued "to present himself in concerning ways," failed to engage in services, and violated the restraining order on multiple occasions by going to the Polinsky Children's Center, and by leaving a letter in Mother's mailbox.

In its August 23, 2023 addendum report, the Agency reported that although Mother had not always communicated effectively with the Agency and the caregiver, she continued to progress in her participation in services and her visitation with the children was "good." According to the family support clinician's report attached to the Agency's addendum report, Mother had secured part-time employment and demonstrated the ability to utilize resources in the community to secure basic needs for her and her children. She was dedicated to engaging in services and work toward reunification with her children and demonstrated "insight to the risk of continued DV exposure to her and her children's overall health and well[-]being." In

_____

[5]     After obtaining a temporary restraining order protecting her and the children from Zachary on June 27, 2023, Mother requested a permanent restraining order. On August 3, 2023, the trial court issued a three-year restraining order that extended only to Mother. Both orders included no-contact between Mother and Zachary and ordered Zachary to move out of the home.

addition to securing a three-year restraining order, she was actively engaging in services to support her overall functioning, including parent partner services, in-home parenting education, domestic violence victim support services, and individual therapy.

The family support clinician assessed Mother's "risk level" as "extreme danger" based on the history of verbal, emotional, physical, and sexual abuse during her relationship with Zachary, the increase in severity and frequency of the abuse over the past year, the continuation of domestic violence after their romantic relationship ended, and the associated risk of homicide within violent relationships. The clinician advised Mother of the danger and recommended "assertive action to protect herself with highest level of sanctions against her ex-boyfriend [Zachary]." Mother admitted she previously allowed Zachary to stay in the home after they broke up, but after the Agency initiated the dependency case, she had been determined to keep him away and had secured a restraining order to protect herself and the children.

The clinician observed Mother was committed to providing a safe and domestic violence-free environment for her children. She had demonstrated insight into the impact of continued domestic violence exposure on herself and her children's overall well-being and had secured a restraining order to prevent continued violence in the home. She was also actively engaged in various support services, and was receiving spiritual support from her congregation. The clinician recommended Mother continue participating in services and psychoeducation.

The Agency did not make any amendments to its assessment or recommendations in its final addendum report dated August 23, 2023.[6] Unlike the underlying July 19, 2023 jurisdiction/disposition report, none of the addendum reports expressly addressed whether there was a viable way to maintain the children safely in the home at any later point in time.

D. *Combined Jurisdiction and Disposition Hearing*

The juvenile court held a combined jurisdiction and disposition hearing on August 23, 2023. In addition to hearing arguments from counsel and Zachary, who elected to represent himself, the juvenile court admitted the following documentary evidence: the Agency's June 27,[7] July 19, July 26, August 15, and August 23, 2023 reports and attachments, a three-page packet submitted by Zachary, and a 29-page packet submitted by Mother that included her written statement in lieu of testimony.

In her statement, Mother asserted she had voluntarily complied with all Agency recommendations and had instituted multiple safety precautions to ensure the safety of her children and herself. She had obtained a three-year restraining order with a move out order against Zachary, changed her locks, maintained multiple safety plans, and utilized multiple local support systems. She declared she had gained awareness of the patterns and destructive impact of domestic violence on herself and her children and

---

[6] The Agency submitted a second August 23, 2023 addendum report, which was limited to its considerations regarding placement of the children.

[7] The detention report is dated June 27, 2023, but is file-stamped June 28, 2023. The juvenile court's August 23, 2023 Minute Orders reference the detention report using the June 27, 2023 and June 28, 2023 dates. We refer to the detention report using the June 27, 2023 date listed in the footer of each page of the report.

asked the juvenile court to order family maintenance and allow her children to return home with the safety precautions already in place along with supervision by the Agency and the juvenile court.

E. *Juvenile Court's Ruling*

Following closing arguments, the court ruled:

> [T]he history of domestic violence in this case is long. There is a history of shutting that one person out and letting that one person back in.
>
> With domestic violence of this level, of this length of time, it's not a matter of a couple months of decision-making. It's a real journey that requires a lot of therapy, a lot of work to overcome, because the very thing that we're dealing with is a cycle, a cycle of violence . . . always—it gets to a point where you have the insight, but what happens is[,] it very quickly moves to the next period where the honeymoon phase comes back, where you start thinking, "oh, well, things might be okay now."
>
> And the thing is, it might not be in this one relationship. Those issues, having been someone who experienced these things, transfer to your next relationship and your next one after that, and I notice you sitting there . . . thinking, "I'm done with this and I'm done with [these] relationships," . . . but the reality is that's not what the science tells us about this type of life experience.
>
> And so what we want to do is ensure that both of you are given the services that you need to address the issues that got us here so that when we return the children home, it's safe to do that.

After acknowledging the parents' negative substance test results and its hope that they could be "sustained over a meaningful period," the juvenile court adopted the Agency's recommendation for continued testing. The juvenile court then proceeded to adjudicate the children as dependents

10

pursuant to section 300 and issued its dispositional order removing the children from both parents' care and custody pursuant to section 361, subdivision (c), stating: "Removal of [E.C.] from the parents and removal of [R.C.] and [R.G.] from the [M]other is necessary under Welfare and Institutions Code section 361, subdivision (c)(1) by clear and convincing evidence that there is a substantial danger to the children's physical health and there are no reasonable means by which the children's physical health may be protected without removing them." (See § 361, subd. (c).)

The juvenile court confirmed the placement of the children with E.C.'s aunt and uncle, adopted the Agency's recommendations, and scheduled the six- and 12-month review hearings for February 20, 2023, and August 26, 2023, respectively.

Mother appealed. She does not challenge the juvenile court's jurisdictional ruling, but argues the court erred by removing the children from her custody in its dispositional order.

## DISCUSSION

The question before us is "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996 (*Conservatorship of O.B.*)) that *both* (1) a substantial danger exists to the well-being of the children if they were returned home, and (2) there are no reasonable means to protect the children's physical health without removing the children from Mother's physical custody (§ 361, subd. (c)(1)).

A. *Standard of Review*

When reviewing the juvenile court's dispositional order, the appellate court must determine if it is supported by substantial evidence while " 'bearing in mind the heightened burden of proof' " in the court below. (*In re*

11

*Hailey T.* (2012) 212 Cal.App.4th 139, 146 (*Hailey T.*).) Substantial evidence must be meaningful and not merely speculative. (*In re Ma.V.* (2021) 64 Cal.App.5th 11, 22 (*Ma.V.*).) We are mindful that the clear and convincing burden of proof at the dispositional phase below is substantially greater than at the jurisdictional phase and reflects the " 'constitutionally protected rights of parents to the care, custody and management' " of their children. (*Id.* at p. 24.) In conducting our review, we view the record in the light most favorable to the Agency and give appropriate deference to how the juvenile court may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011–1012.)

B. *Sufficient Evidence Supports the Juvenile Court's Finding of Substantial Danger to the Children*

We find the evidence presented at the contested dispositional hearing, including the Agency's June 28, July 19, August 15, and August 23, 2023 reports and attachments, constitutes substantial evidence supporting the juvenile court's finding that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home[.]" (§ 361, subd. (c)(1).) In making this determination, "the court may consider the parent's past conduct as well as present circumstances" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917 (*Cole C.*)), and in this case, the reports contain detailed information revealing a long-standing and escalating pattern of domestic violence between Mother and Zachary in the presence of the children, a history of substance abuse by both Mother and Zachary, and Zachary's unwillingness to

change his destructive behaviors and repeated violations of restraining orders.

The focus of section 361, subdivision (c), is to avert harm to children (*Cole C.*, *supra*, 174 Cal.App.4th at p. 917), and the juvenile court recognized Mother was still early in the domestic violence recovery process and her sobriety had not been "sustained over a meaningful period." Mother had been voluntarily participating in services and maintaining a safety plan for approximately two months and had one negative drug test result. Although the parents' violence was not intentionally directed at the children and there is no evidence Mother harmed the children when Zachary was not present, the recent escalation of domestic violence, Zachary's violation of restraining orders, and the fact Mother was still early in the recovery process is sufficient evidence of a substantial risk of harm to the children's physical and emotional well-being in accordance with section 361, subdivision (c)(1). (See *Hailey T.*, *supra*, 212 Cal.App.4th at p. 146 ["The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate[.]"].)

C. *The Record Does Not Reflect Consideration of Reasonable Means to Protect the Children Short of Removal*

Although there was sufficient evidence to support the finding of substantial danger to the children, before the juvenile court may remove the children, it must also find, by clear and convincing evidence, that there are no reasonable means to protect the minor's physical health without removing the children from the parent's physical custody. (§ 361, subd. (c)(1).)

Preliminarily, the Agency argues Mother forfeited this issue by failing to raise it below. Although Mother did not raise an objection or request a more specific statement from the juvenile court, Mother preserved the issue for appeal by contesting the Agency's recommendation for removal and

13

expressly requesting family maintenance in her statement based on specific actions she had already taken to protect the children from future harm and address the safety concerns raised by the Agency. (See *In re Javier G.* (2006) 137 Cal.App.4th 453, 464 [when merits of case are contested, parent is not required to object to agency's failure to carry its burden of proof].)

Proceeding to the merits, we conclude the record does not adequately reflect that the juvenile court considered whether there were less drastic reasonable means to protect the children from future harm. (§ 361, subd. (c)(1).) The juvenile court did not specifically state there were no reasonable means to protect the children absent removal at the hearing, and the August 23, 2023 minute orders include conclusory statements that "there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody" and that "[r]easonable efforts have been made to prevent or to eliminate the need for removal of the child[ren] from the mother's home and to make it possible for the child[ren] to return to their home." (§ 361, subd. (c)(1).) Without more, these conclusory statements are insufficient.

Subdivision (c)(1)(A) and (B) of section 361 require the juvenile court to specifically consider, as a reasonable means to protect the children, the option of removing the offending parent from the home and allowing a nonoffending parent to retain physical custody as long as that parent "presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (See also *In re Vonda M.* (1987) 190 Cal.App.3d 753, 757 ["The more likely it is that the offending parent will have further contact with the nonoffending parent, the more the child's welfare is jeopardized by being placed unsupervised with the nonoffending parent."].) The record does not reflect the juvenile court considered these

14

options as it made no mention of Zachary's removal from the home or the three-year restraining order, nor did the court address the undisputed evidence of Mother's efforts to protect the children from future harm (i.e., she had changed the locks on her home, created and maintained multiple safety plans, voluntarily and actively participated in parenting and domestic violence education, and reported Zachary's violations of the restraining order).

The juvenile court is also statutorily required to determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home."  (§ 361, subd. (e).)  To aid the juvenile court in determining whether the efforts were adequate, the California Rules of Court require the Agency to submit a social study which "must include . . . [a] discussion of the reasonable efforts made to prevent or eliminate removal[.]"  (Cal. Rules of Court, rule 5.690(a)(1)(B)(i).)  In this case, the Agency submitted a total of six reports—the June 27, 2023 detention report, the July 19, 2023 jurisdiction/disposition report, the July 26, 2023 addendum report, the August 15, 2023 addendum report, and two August 23, 2023 addendum reports.  Although the juvenile court admitted all the reports into evidence, its minute orders only state that the juvenile court "read and considered the report(s) of the social worker dated 06/27/23 and 07/19/23" but do not similarly state that the court considered the July 26, August 15, or August 23, 2023 addendum reports.  This is not a distinction without a difference.

In the assessment/evaluation section of the July 19, 2023 jurisdiction/disposition report, the Agency stated "there does not appear to be a viable way to maintain the children safely in the home in the immediate future" despite Mother's enthusiasm to receive services and maintain a

15

restraining order against Zachary in light of the "brief period of time" in which Mother had shown her protective capacity coupled with the fact that the Agency had not yet been able to observe how Mother actually engaged with services.

The August 15, 2023 and August 23, 2023 addendum reports, on the other hand, detail how Mother engaged in services and how she continued to exhibit affirmative actions to protect the children from future harm, and yet the Agency failed to address whether these changed circumstances impacted its initial assessment. Unlike the initial July 19, 2023 jurisdiction/disposition reports, none of the addendum reports mention whether there was, at any later point, a viable way to maintain the children safely in the home. Similarly, the July 19, 2023 jurisdiction/disposition report contains a "reasonable efforts" section that lists referrals to services and drug testing, but the Agency did not address reasonable efforts in any of its addendum reports.

At the time of the dispositional hearing on August 23, 2023, the circumstances requiring the initial detention of the children were seemingly less urgent as Zachary had been removed from the home by court order and Mother had tested negative for substances, demonstrated some insight into the destructive effects of the prior domestic violence on her children, and had obtained and maintained a restraining order against Zachary. The Agency did not address why Mother's undisputed compliance with the Agency's recommendations and participation in the referrals failed to allay its concerns for the children's future safety. At a minimum, the Agency should have explained at the hearing why strict supervision and active monitoring during Mother's continuation in services would not sufficiently protect the children from future harm. Instead, the Agency concluded during closing

argument that "[t]here are no reasonable means to prevent removal here if we're looking at the big picture."

Ultimately, the juvenile court was required to consider less drastic alternatives to removal and could have considered stringent conditions of supervision and close monitoring by the Agency including unannounced visits, random drug testing, and continued monitoring of Mother's participation in the Agency's case plan to ensure she continues to progress and complies with the restraining order and safety plans. (See *In re Steve W.* (1990) 217 Cal.App.3d 10, 23 [juvenile court has ability to provide stringent conditions of supervision and close monitoring of children]; *Hailey T.*, *supra*, 212 Cal.App.4th at p. 148; *In re Ashly F.* (2014) 225 Cal.App.4th 803, 809– 810 (*Ashly F.*).)

On this record, it remains unclear whether the juvenile court considered the Agency's addendum reports, and if it did, whether it considered permitting Mother to care for the children in the home with alternative, reasonable protective measures in place. The juvenile court made no mention of additional monitoring or supervision or other reasonable means to protect the children from future harm at the hearing, nor did it address Mother's statement submitted in lieu of her testimony in which she asserted she had voluntarily complied with all Agency recommendations and had instituted multiple safety precautions to ensure the safety of the children. The juvenile court's statement that there are no reasonable means by which the children could be protected absent removal are not sufficient. (See § 361, subd. (e) [juvenile court is required to "state the facts on which the decision to remove the minor is based"].)

17

D. *The Error was Prejudicial*

The failure to make the required findings supporting removal under section 361, subdivision (c), can be either harmless or prejudicial error depending on the circumstances. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218 (*Jason L.*).) When the juvenile court violates a statutory mandate, reversal is justified only when it is reasonably probable the court would have reached a result more favorable to the appellant in the absence of the error. (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1098–1099.) "[C]ases involving a court's obligation to make findings regarding a minor's change of custody . . . have held that the failure to do so will be deemed harmless where 'it is not reasonably probable such finding, if made, would have been in favor of continued parental custody.' " (See *Jason L.*, at p. 1218.) Based on our review of this record, we cannot conclude the error was harmless.

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." (*Stanosky v. Kramer* (1982) 455 U.S. 745, 753].) Section 361 represents an "effort to shift the emphasis of the [California] child dependency laws to maintaining children in their natural parents' homes where it was safe to do so, and to clarify the conditions in which a minor could be removed from his or her parents' custody." (*Jason L.*, *supra*, 222 Cal.App.3d at p. 1216.) It therefore requires the juvenile court to consider less drastic measures than removal (see *Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011–1012), and a clear record satisfying this statutory requirement is especially needed in cases where the

circumstances that caused the children's initial detention are no longer urgent. (See *In re James T.* (1987) 190 Cal.App.3d 58, 65.)

Out-of-home placement is a "last resort," and "[t]he law requires that a child remain in parental custody pending the resolution of dependency proceedings, despite the problems that led the court to take jurisdiction over the child, unless the court is clearly convinced that such a disposition would harm the child." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 525 (*Henry V.*); see also *In re M.V.* (2022) 78 Cal.App.5th 944, 959.) The requirement for a discussion by the child welfare agency of its reasonable efforts to prevent or eliminate removal (Cal. Rules of Court, rule 5.690(a)(1)(B)(i)) and a statement by the court of the facts supporting removal (§ 361, subd. (e)) are important safeguards in the dependency scheme. (See *Ashly F.*, *supra*, 225 Cal.App.4th at p. 810.)

We find the juvenile court's failure to strictly follow applicable statutory mandates was prejudicial in this case. We cannot deduce from our review of the record whether the juvenile court considered less drastic reasonable means to secure the children's safety as required by section 361, subdivision (c)(1), nor does the record reflect the juvenile court's determination of whether reasonable efforts were made to prevent the need for removal of the children from their home and statement of facts upon which the court's decision was based as required by section 361, subdivision (e). (See *Ashly F.*, *supra*, 225 Cal.App.4th at p. 810 [failure to comply with statutory mandate was prejudicial because "ample evidence existed of 'reasonable means' to protect [the children] in their home" given the mother's expression of remorse and enrollment in a parenting class]; *Henry V.*, *supra*, 119 Cal.App.4th at p. 529 [although juvenile court checked box reciting findings required under section 361, subdivision (c)(1), it "did not mention the existence of alternatives to out-of-home placement" and there

19

was "ample evidence that appropriate services could have been provided . . . in the family home"]; *In re D.P.* (2020) 44 Cal.App.5th 1058, 1067.) Accordingly, we reverse the dispositional order and remand the matter for a new disposition hearing.

E. *Directions on Remand*

Nothing in this opinion is intended to foreclose the juvenile court from considering new evidence or changed circumstances on remand that may have arisen during the pendency of this appeal. (See *In re Abram L.* (2013) 219 Cal.App.4th 452, 464, fn. 6.) Because the record on appeal does not contain information as to any factual developments or orders since the entry of the August 23, 2023 dispositional order, and we cannot speculate as to their possible effect on the children's circumstances, we leave it to the sound discretion of the juvenile court following remand to determine what specific procedural steps are

appropriate in light of our disposition.  (See *In re Isayah C.* (2004) 118 Cal.App.4th 684, 701.)

DISPOSITION

The August 23, 2023 dispositional order is reversed, and this matter is remanded for further proceedings consistent with this opinion.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.